EPHRAIM A. BREST *vs.* COMMISSIONER OF INSURANCE.

MALCOLM E. NICHOLS & others *vs.* SAME.

ANDREW A. CASASSA *vs.* SAME.

Suffolk.    December 10, 1929. — January 6, 1930.

Present: RUGG, C.J., PIERCE, WAIT, SANDERSON, & FIELD, JJ.

*Insurance,* Compulsory motor vehicle liability insurance. *Commissioner of Insurance. Equity Jurisdiction,* Review of decision of insurance commissioner. *Equity Pleading and Practice,* Parties. *Supreme Judicial Court. Constitutional Law,* Equal protection of law.

In establishing, under G. L. c. 175, § 113B in the amended form appearing in St. 1929, c. 166, § 1, classifications of risks and rates to be charged as premiums by companies in connection with compulsory motor vehicle insurance, it is proper for the commissioner of insurance to consider as one factor a grouping of motor vehicles by size, make, kind and structure.

The meaning of that part of G. L. c. 175, § 113B in the amended form appearing in St. 1929, c. 166, respecting a petition for review of an order by the commissioner of insurance establishing classifications of risks and rates to be charged as premiums by companies in connection with compulsory motor vehicle insurance, is not that by simple petition without more parties are entitled to ask the court to review the whole field covered by the commissioner and make its own finding; but, since those provisions import into the procedure for review the main features of equity pleading and practice, the petition must contain allegations setting out with certainty, brevity and an adequate degree of particularity the grounds upon which relief is sought; and, where findings of fact made by the commissioner are attacked,

there must be set out in the petition specification of the findings and the grounds of alleged error.

Where findings of fact made by the commissioner in his order are not assailed in such a petition, which annexed the commissioner's order to, and incorporated it in, the petition, those findings, upon demurrer to the petition, must be accepted as true.

Upon the allegations of such a petition and statements of the commissioner's order incorporated therein, it appeared that, before making his order, the commissioner had held hearings as required by the statute, and that statistics and data and all available information, gathered over a period of years, as to accidents involving motor vehicles through fault of their drivers and as to losses falling under compulsory insurance requirements arising therefrom were considered by the commissioner and that he found therefrom that such accidents and losses in fact could be fairly classified with reference to defined areas within which such motor vehicles were habitually kept. The commissioner made a classification of risks and premium charges based in part upon territorial districts, dividing the Commonwealth into eight territorial districts, so called, of which one was the city of Chelsea, a second was the city of Revere, and a third was the city of Boston. There was in the petition no allegation disputing findings of fact made by the commissioner, nor an allegation that he acted in bad faith. The respondent demurred to the petition. The petitioner contended that the classification of risks and premium charges based on territorial divisions where motor vehicles were garaged was inherently and necessarily unequal and discriminatory and could have no possible relation to the risks assumed by the insurer. *Held,* that

(1) While theory and logic seemed to lend support to the contention of the petitioner, the commissioner was justified in basing his order on facts shown by the data of experience considered by him;

(2) There appeared no adequate reason for reversing the decision of the commissioner;

(3) The acts of the commissioner could not be said as a matter of law to be violative of the Federal or of the State constitution.

It was proper for a person, who was the owner of a motor vehicle, a resident within a territory where a premium charge was established by an order of the commissioner of insurance under said § 113B which was higher than those in other parts of the Commonwealth, and who, if such order was wrong, was aggrieved thereby, to bring a petition of the character above described.

THREE PETITIONS, filed in the Supreme Judicial Court for the county of Suffolk respectively on September 17, September 27, and October 2, 1929, under § 113B, added to G. L. c. 175 by St. 1925, c. 346, § 4, and amended by St. 1927, c. 182, § 1; St. 1928, c. 381, § 6; St. 1929, c. 166, to review the action of the respondent in establishing on September 16, 1929, classifications of risks and the rates

to be charged as premiums by companies in connection with compulsory motor vehicle insurance for the year beginning January 1, 1930.

The respondent demurred to each petition. By order of *Crosby*, J., the three petitions were consolidated and were reserved on the petitions and demurrers for determination by the full court.

*R. Clapp*, Assistant Attorney General, for the respondent.

*F. S. Deland*, Corporation Counsel of Boston, for the petitioner Nichols.

*W. P. Murray*, for the petitioner Casassa.

*C. Richmond*, for the petitioner Brest, submitted a brief.

RUGG, C.J. These suits, consolidated and reserved upon the petitions and demurrers for determination by this court, are brought to review the action of the respondent in establishing classifications of risks and the rates to be charged as premiums by companies in connection with compulsory motor vehicle insurance. The demurrers admit, for the purposes of this decision, the truth of all facts well pleaded in the several petitions, but not the averments of law. Therefore the allegations must be examined with care. The three petitions, although differing in details, are founded upon substantially the same allegations. They set out that the respondent has established and put in force a schedule of classification of risks and premium charges based upon a combination of two factors, (1) territorial districts, and (2) a group specified as "size, kind, make and structure" of motor vehicle.

Although argument has been made to the effect that the second factor cannot be a proper basis for consideration in fixing premiums, it does not seem entitled to serious discussion. It appears to us plain that the insurance risk on motor vehicles may vary with size, make, kind and structure. These specifications well may include other subsidiary matters, as, for example, weight, power, capacity for speed, type, use. The premiums rightly and justly to be paid for the required insurance may be based in part upon the specifications composing the second factor. Weight has been given to matters of this nature for many years in establishing fees

for registration and other statutory regulations of motor vehicles. We regard it as clear that in this respect no ground sufficient to require review of the action of the respondent is alleged.

The chief argument is directed against the first factor. The allegations in that particular in substance are that the respondent divided the Commonwealth into eight so called territories; that as to private passenger motor vehicles, territory I comprises the city of Chelsea, territory II the city of Revere, and territory III the city of Boston; that the other cities and towns of the Commonwealth are grouped into five other territories; that the respondent further classified the risks based in part upon the territory in which the particular motor vehicle was garaged for the greater part of the calendar year preceding the date of the order. Incorporated in the allegations of the petitions by reference is the "Memorandum of finding and order relative to the classifications of risks, and to the schedule of premium charges for motor vehicle liability policies and bonds," filed in his office by the respondent. This "Memorandum" includes a complete schedule of classification of risks and premium charges of which complaint is made. In the "Memorandum" is a brief recital that public hearings were held by the defendant in his official capacity on several days, at which protests were voiced in behalf of residents of Chelsea and Revere against continuance of rates based on a territorial basis theretofore established, and arguments presented for a flat rate throughout the Commonwealth. Other contentions and arguments were offered and were considered by the respondent and discussed in the "Memorandum." With reference to the territorial basis for rates, it there was said: "The plan is based on the fact that the risk or hazard assumed by the insurer varies with the place where the insured cars are principally garaged. For example, the available experience shows that cars garaged in Boston are much more likely to be involved in accidents, resulting in loss to the insurers, than cars garaged in Springfield or Worcester. The rates in Boston are therefore higher than in the latter cities. There may of course be reasonable difference of opinion in

respect to the number of territories which should be established, or the cities or towns which should be allocated to a given territory. These questions, however, can only be decided in the light of the experience as it develops from year to year. It was urged at the public hearing that the 1929 rates be re-established for 1930. On the experience now available certain reductions in the 1929 rates are warranted. It is also clear that because of the wide difference in the experience of certain municipalities grouped together in the 1929 territories a rearrangement of territories is required. While this rearrangement causes increases in rates for some municipalities, the experience for 1927 and 1928 shows that reductions are merited in others. It would be obviously unjust to penalize whole communities by failing to carry out this rearrangement." There is further discussion of contentions made at the hearings before the respondent, prior to the promulgation of the schedules, that the statistics on which were based the high rates proposed for Chelsea and Revere were unreliable in that fraudulent or excessively large settlements were made by insurers of claims against owners of motor vehicles garaged in those cities. Respecting that contention the finding of the respondent is stated in the "Memorandum" as follows: "The evidence did not warrant the conclusion that there was fraud in connection with any of these claims; or that the companies had paid claims without due investigation or that they had paid out excessive sums in settlements."

Thus it appears from the allegations that the respondent by geographical groupings of the several municipalities, has divided the area of the Commonwealth into eight territories and that the premium charges for insurance payable by the owner of any motor vehicle depend in considerable part upon the particular territory in which he keeps such motor vehicle, the premium charges varying with the different territories. It further appears that the division into territories was made by the respondent after public hearings at which he found it to be "the fact that risk or hazard" of liability "assumed by the insurer" varies according to the locality where the insured motor vehicles are principally garaged.

The power and duty of the court with respect to petitions of this nature are prescribed in St. 1929, c. 166 (amending earlier statutes) in these words: "Any person or company aggrieved by any action, order, finding or decision of the commissioner under this section may," within a specified time, "file a petition in the Supreme Judicial Court for the county of Suffolk for a review of such action, order, finding or decision. . . . The court shall have jurisdiction in equity to modify, amend, annul, reverse or affirm such action, order, finding or decision, shall review all questions of fact and of law involved therein and may make any appropriate order or decree. The decision of the court shall be final and conclusive on the parties." These words do not mean that by simple petition without more parties are entitled to ask the court to review the whole field covered by the commissioner and make its own finding. They import into the procedure for review the main features of equity pleading and practice. G. L. c. 214, § 12. The petition must contain allegations setting out with certainty, brevity and adequate degree of particularity the grounds upon which relief is sought. If in cases like the present findings of fact made by the commissioner are attacked, there must be set out in the petition specification of the findings and the grounds of alleged error. "'Every material fact necessary to entitle the plaintiff to the relief prayed for must be contained in the stating part of the bill.' 'This part of the bill must contain the plaintiff's case, and his title to relief; and every necessary fact must be distinctly and expressly averred, and not in a loose and indeterminate manner, to be explained by inference, or by reference to other parts of the bill.'" *Stevens* v. *Hayden,* 129 Mass. 328, 332. *Bartlett* v. *New York, New Haven & Hartford Railroad,* 221 Mass. 530, 539. *Boston* v. *Treasurer & Receiver General,* 237 Mass. 403, 415. *Cram* v. *Cram,* 262 Mass. 509, 513. Under St. 1929, c. 166, it would have been open to the petitioners by appropriate allegations to attack the findings of facts made by the defendant. Such findings are not assailed by the allegations of these petitions. Those findings must be accepted as true. Therefore it is unnecessary to discuss the meaning and scope of the "re-

view" vested in the court by said c. 166. See *Swan* v. *Justices of the Superior Court,* 222 Mass. 542, 547, 548; *Mayor of Medford* v. *Judge of the District Court,* 249 Mass. 465, 471.

The bald question presented on this record and the one argued is whether a classification of motor vehicles for the purpose of fixing rates for the insurance premium charges according to the territory within which the motor vehicle is principally garaged can be lawful under the governing statute and controlling provisions of the State and Federal Constitutions.

The power and the duty of the respondent, with respect to the matters here in issue are prescribed in § 113B, first inserted in G. L. c. 175 by St. 1925, c. 346, § 4, and finally amended as now in force by St. 1929, c. 166. (For intervening statutes see St. 1925, c. 346, § 4; St. 1927, c. 182; St. 1928, c. 381, § 6; St. 1929, c. 34, § 2.) The parts of that section here material are in these words: "The commissioner shall, annually on or before September fifteenth, after due hearing and investigation, fix and establish fair and reasonable classifications of risks and adequate, just, reasonable and non-discriminatory premium charges to be used and charged by companies in connection with the issue or execution of motor vehicle liability policies or bonds, both as defined in section thirty-four A of chapter ninety, for the ensuing calendar year or any part thereof. He shall, on or before said date, sign memoranda of the classifications and premium charges fixed and established by him in such form as he may prescribe and file the same in his office . . . . During said calendar year, the classifications and premium charges fixed and established by the commissioner for such policies shall be used by all companies issuing such policies, and the classifications and premium charges for such bonds shall be used by all companies acting as surety on such bonds. The commissioner shall cause notice of every such hearing to be given by advertising the date thereof once in at least one newspaper printed in each of the cities of Boston, Worcester, Springfield, Newburyport, Gloucester, Pittsfield, Fall River, New

Bedford, Haverhill and Lawrence, at least ten days prior to said date, and he shall incorporate in such notice or publish therewith a schedule clearly and precisely setting forth the premium charges proposed to be fixed and established for the ensuing calendar year. . . . The commissioner . . . may at any time require any company to file with him such data, statistics, schedules or information as he may deem proper or necessary to enable him to fix and establish or secure and maintain fair and reasonable classifications of risks and adequate, just, reasonable and non-discriminatory premium charges for such policies or bonds. . . . Memoranda of all actions, orders, findings and decisions of the commissioner shall be signed by him and filed in his office as public records open to public inspection."

As matter of statutory construction, the words of said § 113B empower the respondent to establish any reasonable classification of risks and adequate, reasonable and non-discriminatory premium charges. The words of that section just quoted are too clear to require elucidation as to the issues here involved. No argument has been adduced directed to a constricted interpretation of the statute or attacking its details. The argument in behalf of the petitioners in brief is that no such classification and premium charges can possibly be fair and reasonable and nondiscriminatory, and that their constitutional rights have been thus infringed.

The Declaration of Rights of the Constitution of this Commonwealth in arts. 1, 6, 7, 10, and the Fourteenth Amendment to the Constitution of the United States contain ample guaranties for equal protection of equal laws without discrimination or favor based upon unreasonable distinctions. *Commonwealth* v. *Libbey*, 216 Mass. 356, 358, and cases collected. *Vigeant* v. *Postal Telegraph Cable Co.* 260 Mass. 335, 337–341, and cases there reviewed. *Commonwealth* v. *Strauss*, 191 Mass. 545, 550. Without repeating what is there said, it is accepted and used as the basis of the present decision. Not as modifying in any particular what was said in these three decisions but as

stating in other and pertinent words an important principle, reference is made to other adjudications.  It was said in *Gulf, Colorado & Santa Fé Railway* v. *Ellis,* 165 U. S. 150, at pages 165, 166: "It is apparent that the mere fact of classification is not sufficient to relieve a statute from the reach of the equality clause of the Fourteenth Amendment, and that in all cases it must appear not only that a classification has been made, but also that it is one based upon some reasonable ground — some difference which bears a just and proper relation to the attempted classification — and is not a mere arbitrary selection."  In *Williams* v. *Arkansas,* 217 U. S. 79, at page 90, is found this: "legislation which 'in carrying out a public purpose is limited in its application, if within the sphere of its operation it affects alike all persons similarly situated, is not within the amendment,' *Barbier* v. *Connolly,* 113 U. S. 27, and 'When a State legislature has declared that, in its opinion, policy requires a certain measure, its action should not be disturbed by the Court under the Fourteenth Amendment, unless they can see clearly that there is no fair reason for the law that would not require with equal force its extension to others whom it leaves untouched.' *Missouri, Kansas & Texas Ry. Co.* v. *May,* 194 U. S. 267."  In *F. S. Royster Guano Cc.* v. *Virginia,* 253 U. S. 412, at page 415, occur these words: "It is unnecessary to say that the 'equal protection of the laws' required by the Fourteenth Amendment does not prevent the States from resorting to classification for the purposes of legislation.  Numerous and familiar decisions of this court establish that they have a wide range of discretion in that regard.  But the classification must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike . . . . Nevertheless, a discriminatory . . . law cannot be sustained against the complaint of a party aggrieved if the classification appear to be altogether illusory."  *State* v. *Hammer,* 13 Vroom, 435, 440, 441.  *American Sugar Refining Co.* v. *Louisiana,* 179 U. S. 89.  *Tanner* v. *Little,* 240 U. S. 369, 382, 383.

The principal contention of the petitioners is that the classification of risks and premium charges based on territory where motor vehicles are garaged is inherently and necessarily unequal and discriminatory and can have no possible relation to the risks assumed by the insurer. It is urged that the risk of an insurer depends upon the skill and reliability of the operator of a motor vehicle and is wholly dissociated from the place where it may be kept. It may be conceded that there is an appearance of inequality if X is required to pay a higher premium charge, provided his motor vehicle is principally garaged in Chelsea or Revere or Boston, cities constituting respectively territories I, II and III, than he would be required to pay if it were principally garaged in Cambridge in territory IV, or in Brookline in territory V, or in Andover in territory VI; or if Y and Z, owning precisely the same kind of motor vehicle and possessing in every particular the same capacity, experience and skill in operating the motor vehicle, but the one keeping it in Chelsea in territory I and the other in Lancaster in territory VIII, are required to pay substantially different premium charges. Theory and logic seem to lend some support to the contentions of the petitioners. That is not all there is to the problem. Every question of constitutional law must be tested with reference to actual facts. The Constitution is not an abstraction; it does not exist in hypothetical ether created by theory and logic; it establishes a frame and principles of government and it operates upon the rights and duties of persons. These must be ascertained with reference to facts. The legal validity of the classification of risks and of the premium charges made by the defendant must be determined with reference to the actual facts, not with reference to abstruse reasoning. Those facts in the cases at bar must be found in the allegations of the petitions including the facts stated in the "Memorandum" of the respondent incorporated therein.

It is apparent or fairly inferable from the "Memorandum," made part of the petitions by reference, that the respondent as to matters of form and procedure conformed to the pro-

visions of said § 113B.  He held the required public hearings, listened to proffered evidence and weighed arguments presented.  The statute as to compulsory insurance in general has been in effect since January 1, 1927.  St. 1925, c. 346, § 13.  There had been thus experience on the part of insurance companies for the years 1927, 1928 and a part of 1929 under compulsory insurance, as to which the defendant could obtain statistics and other information to enable him to establish a just classification and premium charges.  The provisions of said § 113B as to such statistics and information are not confined to those years.  It is matter of common knowledge that before compulsory insurance of motor vehicles there was extensive voluntary insurance by owners of motor vehicles.  Important statistics and other data derived from that source may have been at the disposal of the defendant.  At all events, it is inferable from the "Memorandum" that the insurance companies have kept statistics as to accidents bearing upon the reasonableness of territories as a basis of classifications and premium charges.  It is and has been for many years a statutory requirement that all motor vehicle accidents resulting in bodily injury or death must be reported in writing forthwith to the registrar of motor vehicles, and he is also empowered to investigate all such accidents.  G. L. c. 90, § 26, and § 29 as amended by intervening statutes and finally by St. 1929, c. 230.  Some tabulation of the facts ascertained in this way well may be accessible.

Thus there was available a considerable body of information bearing upon accidents in which motor vehicles were involved as related to the places where they were principally garaged.  In these circumstances every presumption favors the regularity of the action of the respondent as a public officer in the performance of his duty.  *Duffy* v. *Treasurer & Receiver General*, 234 Mass. 42, 50.  *Boston* v. *Treasurer & Receiver General*, 237 Mass. 403, 417.  *Godfrey* v. *Building Commissioner of Boston*, 263 Mass. 589, 591.  Of course such presumption cannot bridge any constitutional difficulties, but it goes as far in the circumstances here disclosed as to afford basis for inferring all supporting facts essential to the

classification and premium charges to the extent that they otherwise are justifiable. It follows that the fair import of the petitions is that there appeared to the respondent to be authenticated facts to the effect that accidents in which motor vehicles were involved and their drivers at fault could be classified as to numbers according to defined localities where the motor vehicles were principally garaged. Stated somewhat differently, the respondent thought that he had before him sufficiently reliable and extensive statistics tending to show that motor vehicles principally garaged in certain defined localities are less hazardous insurance risks than motor vehicles kept in other localities. There is no attack in the petitions on the good faith of the respondent. We do not interpret the petitions to mean that the information upon which the respondent based his "Memorandum" was not in his possession or that he made essential mistakes in its use. The cases at bar must be considered on the footing that statistics and data and all available information as to accidents involving motor vehicles, through fault of their drivers and as to losses falling under compulsory insurance requirements arising therefrom, showed that such accidents and losses in fact could be fairly classified with reference to defined areas within which such motor vehicles were habitually kept. That must be taken to be the fact. It is the fact taught by experience. Thus there appears to be a conflict between theoretical exposition on the one side and the actual facts on the other side. A widely quoted statement is that "The life of the law has not been logic: it has been experience." The Common Law by Holmes, page 1. That is a doctrine of the present and not of the past alone. It seems to us that the teaching of experience and ascertained facts must prevail over theory and logic in the cases at bar. Ultimately theory and logic must be adjusted to conform to facts. It may not be easy to state the reason why the risks of insurance of motor vehicles as required by the statutes should vary according to localities in which they are principally garaged, and be greater if garaged in one place and less if garaged in another. But the fact of such variation in risk must be assumed on these records. This

being so, there appears to be no adequate reason for granting the prayers of the petitions.

The petitioners rely upon various statements in *Opinion of the Justices*, 251 Mass. 569, 596, 597, 613. Those are accepted as sound, but they are not in conflict with the decision here made. The enumeration of elements for consideration in determining whether insurance ought to issue to a particular individual, on the page last cited, obviously was intended to be illustrative and not exhaustive.

The petitioners, being residents within the territories where higher premium charges are established than in other parts of the State, and being owners of motor vehicles, are persons who would be aggrieved by the action of the defendant if it were wrong. *Monroe* v. *Cooper*, 235 Mass. 33, 34. *Siegemund* v. *Building Commissioner of Boston*, 259 Mass. 329, 332.

The conclusion is that on these records the classification of risks and the premium charges as established by the defendant ought not to be modified, annulled or reversed.

In each case the entry may be

*Demurrer sustained.*