CENTURY CAB INC. & others *vs.* COMMISSIONER OF
INSURANCE & others
(and a companion case[1]).

Suffolk.     December 8, 1950. — July 31, 1951.

Present: QUA, C.J., RONAN, WILKINS, WILLIAMS, & COUNIHAN, JJ.

*Insurance,* Establishment of classifications of risks and premium charges, Motor vehicle liability insurance, Commissioner of insurance. *Notice. Constitutional Law,* Equal protection of laws. *Evidence,* Presumptions and burden of proof. *Public Officer.*

A notice of hearing on the establishment of classifications of risks and premium charges for compulsory motor vehicle liability insurance, conforming in content to the requirements of G. L. (Ter. Ed.) c. 175, § 113B, as amended, and duly published by the commissioner of

---

[1] The companion case is by Maurice A. Wantman, Inc. against Hardware Mutual Casualty Company and the commissioner of insurance.

insurance in newspapers in the ten cities specified in the statute, was not invalidated by the fact that he also published an abbreviated notice in other newspapers.

The commissioner of insurance conformed to the requirement of G. L. (Ter. Ed.) c. 175, § 113B, as amended, that in or with the published notice of a hearing on the establishment of classifications of risks and premium charges for compulsory motor vehicle liability insurance there be published "a schedule clearly and precisely setting forth the [proposed] premium charges," where the notice included a schedule of the "manual rates" proposed for the various classes of risks determined according to type of vehicle and territory and also stated in general terms that an "experience rating plan" would apply to individual motor vehicle owners meeting certain described eligibility requirements.

In establishing classifications of risks and premium charges for compulsory motor vehicle liability insurance pursuant to G. L. (Ter. Ed.) c. 175, § 113B, as amended, the inclusion of a sound, reasonable, and actuarially recognized "experience rating plan" whereby in substance, with respect to each individual motor vehicle owner meeting certain eligibility requirements designed to subject to the plan only those whose experience had been broad enough to have significance, the "manual rates" determined according to type of vehicle and territory and based primarily on average hazard would be modified according to an "experience modification" ratio obtained by comparing his actual loss experience with the average experience of his class over a certain period, was not beyond the statutory power of the commissioner and would not violate the Fourteenth Amendment to the Federal Constitution by denying equal protection of the laws to the motor vehicle owners subjected to the plan.

The commissioner of insurance would comply with the requirement of G. L. (Ter. Ed.) c. 175, § 113B, as amended, that he "fix and establish" classifications of risks and premium charges for compulsory motor vehicle liability insurance even though he were to use a prescribed mathematical formula in calculating the "experience modification" of the determined "manual rates" in the application of an "experience rating plan."

The establishment of classifications of risks and premium charges by the commissioner of insurance under G. L. (Ter. Ed.) c. 175, § 113B, as amended, must be presumed to be proper in the absence of anything to show the contrary.

PETITION, filed in the Supreme Judicial Court for the county of Suffolk on November 14, 1949. Also a

BILL IN EQUITY, filed in the Superior Court on April 21, 1949.

The first case was reserved and reported by *Ronan, J.,* and the second case by *Forte, J.*

*S. S. Ganz, (C. J. Innes, H. H. Ham, Jr., & D. C. Ganak* with him,) for the petitioners-plaintiffs.

*E. P. Healy,* Assistant Attorney General, *& R. A. Cutter, (J. W. Perkins & J. S. McKenney* with them,) for the respondents-defendants.

*D. H. Fulton,* by leave of court, submitted a brief as amicus curiae.

WILLIAMS, J.   These are two proceedings in equity involving the legality of premium charges established by the commissioner of insurance for the years 1948, 1949, and 1950, which may conveniently be considered together.

The first is a petition under G. L. (Ter. Ed.) c. 175, § 113B, as amended, for review of an order of the commissioner of insurance establishing premium charges for compulsory motor vehicle liability insurance on policies to be issued for the calendar year 1950, with a prayer "That the order by the respondent commissioner of insurance adopting the 'Massachusetts Automobile Experience Rating Plan For 1950' be annulled." The petitioners are owners of taxicabs, principally garaged in Boston, Somerville, and Lowell. The original respondent is the commissioner. American Employers' Insurance Company and Liberty Mutual Insurance Company, companies authorized to issue compulsory motor vehicle liability policies in this Commonwealth, have been permitted to intervene as respondents. The case, after reference to a master whose report has been confirmed, is before us by reservation and report of a single justice of this court upon the petition, the respondents' answers, and the master's report for decision of the following questions of law. "1. Has the commissioner of insurance by the inclusion of Section F entitled 'Massachusetts Automobile Experience Rating Plan' in his order of October 25, 1949, acted within the authority granted to him by law and has he performed the duties imposed upon him by law to fix and establish compulsory motor vehicle liability insurance classifications of risks and premium charges and are the premium charges resulting from the application of Section F effective for the year 1950? 2. Do the provisions

of Section F entitled 'Massachusetts Automobile Experience Rating Plan' of the respondent commissioner's order of October 25, 1949, violate the petitioners' rights under the Fourteenth Amendment to the Constitution of the United States? 3. Is Section F of the commissioner's order of October 25, 1949, ineffective by reason of the manner in which the commissioner gave notice of the hearing held by him on October 10, 1949? 4. Upon the foregoing record and in this proceeding, to what extent are the petitioners entitled to raise the foregoing questions or any of them?" This fourth question has not been argued. The right of the petitioners to institute these proceedings appears to have been settled in *Brest* v. *Commissioner of Insurance*, 270 Mass. 7, 19.

General Laws (Ter. Ed.) c. 175, § 113B, as amended, provides that "The commissioner shall, annually on or before September fifteenth, after due hearing and investigation, fix and establish fair and reasonable classifications of risks and adequate, just, reasonable and non-discriminatory premium charges to be used and charged by companies in connection with the issue or execution of motor vehicle liability policies or bonds, both as defined in section thirty-four A of chapter ninety, for the ensuing calendar year or any part thereof. He shall, on or before said date, sign memoranda of the classifications and premium charges fixed and established by him . . . . The commissioner shall cause notice of every such hearing to be given by advertising the date thereof once in at least one newspaper printed in each of the cities of Boston, Worcester, Springfield, Newburyport, Gloucester, Pittsfield, Fall River, New Bedford, Haverhill and Lawrence, at least ten days prior to said date, and he shall incorporate in such notice or publish therewith a schedule clearly and precisely setting forth the premium charges proposed to be fixed and established for the ensuing calendar year."

The master has found that on or about September 26, 1949, the commissioner caused to be published in at least one newspaper published in each of the above named cities

a notice of a hearing to be held by him on October 10, 1949; that a hearing was held on that date; and that on October 25, 1949, he filed a "memorandum of his actions, orders, findings and decisions." In this memorandum, the commissioner, for the purpose of fixing and establishing rates for compulsory insurance, has classified all motor vehicles by type, each classification by type being subdivided according to the territorial district in which the vehicle was principally garaged. Such classification has been held by this court to be lawful (*Brest* v. *Commissioner of Insurance*, 270 Mass. 7), and no contention to the contrary is made in these proceedings. The complaint of the petitioners is confined to Section F of the memorandum wherein an additional classification of motor vehicle owners is established under an "experience rating plan" which by reason of its eligibility requirements is mandatory in its application to the petitioners as owners of taxicabs. It is a plan substantially the same as the plans used by the commissioner in establishing rates for the years 1948 and 1949. Premium rates for a class established under the classification of motor vehicles according to type and territory are based primarily on the average hazard, as shown by experience, attending the operation of vehicles in the class. These rates are termed "manual rates" and include "two elements: (1) the pure premium representing the average loss to be expected from a vehicle of a given type garaged in a given territory and (2) the expense loading representing the average cost of operating a casualty insurance company apart from the amount to be paid for losses." The purpose of the experience rating plan is to classify risks by determining for each owner of motor vehicles, who meets the eligibility requirements of the plan, an insurance rate which recognizes his measurable departure in hazard from the average hazard in his class. The master finds that "It is also a purpose of experience rating in general to encourage safe driving and to prevent accidents. Under experience rating the worse than average risk will be charged a higher premium, but by the same token should find it less difficult to obtain coverage. Ownership and not identity of

the operator determines the risk to be rated, just as it determines the person required to carry compulsory motor vehicle insurance."

It is intended that the plan shall be applied only to those whose experience in relation to motor vehicle accidents is of sufficient breadth to have significance as to future expected losses. Eligibility therefore is limited to owners who for a period of three years ending one year prior to January 1 of the year to which the rates apply have paid a total premium of at least $1,000 and during the last year of the period have had the experience of at least five "earned car or plate years," "meaning such experience as is equivalent to having five cars on the road and exposed to risk for one year." For the purpose of the 1950 rates this period includes the years 1946, 1947, and 1948. They are termed the "experience years."

The departure of the eligible individual's risk from the average risk of his class is measured by comparing his actual experience as reflected in losses paid and reserves for losses outstanding with the average experience of the class during these years. The modification of the manual rate to obtain the rate applicable to the individual under the rating plan is accomplished by multiplying the manual rate by a fraction or decimal representing a ratio ascertained by such comparison. The ratio is called the "experience modification" and is a reduction to mathematical form of the relation of the expected loss of the individual owner based on his actual losses during the experience period to his expected loss as an average member of his class.

It is unnecessary to describe in detail the method employed in computing this ratio. By means of credibility factors or percentages actuarily obtained the amounts of losses are reduced or "weighted" to determine their approximate experiential value. Different factors are applied to those of $500 and less, which are greater in frequency and constitute 60% of the total losses, and to those in excess of $500. To the total of the losses after "weighting" by the credibility factors there is added, to give weight to absence

of loss, a percentage of the average expected loss of the class obtained by the use of a third credibility factor. The sum constitutes the numerator of the experience modification fraction. The expected loss of the insured as an average member of his class is the denominator. By applying this fraction to the manual rate of the insured his premium charge under the rating plan is obtained.

"If the experience modification is over 100%, the premium rate under the rating plan is higher than the manual rate. If it is under 100%, the rate under the rating plan is lower than the manual rate."

"The computation of the experience modification and the experience premium from the loss data and the tables in the plan [in which are listed the credibility factors to be used] requires only simple arithmetic. The computation of the credibility factors as set out in the table and the way in which they interact and act upon the premium involves somewhat more complicated mathematical processes for which actuarial training and judgment is desirable. There is no occasion in the ordinary computation of the experience modification for going into the derivation of the credibility formula."

The data of losses paid and reserves for losses outstanding are provided by the records of the insurance companies writing compulsory motor vehicle liability insurance. These data are submitted by the companies to the Massachusetts Automobile Rating and Accident Prevention Bureau, an unincorporated association which has been licensed as a rating bureau under G. L. (Ter. Ed.) c. 175A, inserted by St. 1947, c. 641, § 1. The bureau has been adopted by the commissioner as his principal instrumentality for the collection and tabulation of data to be used in the classification of risks and the fixing of premium charges. See *American Employers' Ins. Co.* v. *Commissioner of Insurance*, 298 Mass. 161, 164. The records of the companies and of the bureau are supervised and inspected periodically by the commissioner. The insured may obtain the statistical data of his losses from the bureau or, if he has continued to be insured

in the same company over the entire experience period, from his insurance company. The master finds that "an insured is entitled to obtain from the bureau his experience modification factor and also a copy of the computation sheet after it has been computed."

It is the contention of the petitioners that, by reason of the manner in which notice of the hearing before the commissioner was given and its lack of definiteness, the plan never became effective; that the commissioner had no authority to put the plan into effect; and that it violates their rights under the Fourteenth Amendment to the United States Constitution.

The notice of the hearing was published in the newspapers of the ten cities specified by the statute. It gave the date of the hearing, included a schedule of the manual rates, and stated, "An Experience Rating Plan shall apply to all risks or legal entities which produce $1,000 in premium for Compulsory Motor Vehicle Liability Insurance and, in addition, have developed an exposure of at least five earned car or plate years in the year of the experience period ending one year prior to the date for which the experience modification becomes effective." Although it appears that the commissioner caused to be published in other newspapers an abbreviated form of notice which contained no reference to the rating plan, such publications did not invalidate the notice published in accordance with the statute. The additional publications may be regarded as surplusage. *Rougeau* v. *Mayor of Marlborough*, 277 Mass. 487, 492. As found by the master, both types of notice contained the proposed tentative manual rates and an invitation to inspect information on file in the commissioner's office. "There was no evidence that any of the petitioners were in fact misled by either form of notice."

In our opinion there was no failure to comply with the provision of the statute that the notice should include "a schedule clearly and precisely setting forth the premium charges proposed to be fixed and established for the ensuing calendar year." The charges to which reference is made are

those which are proposed by the commissioner to be considered at the hearing. Necessarily they are tentative and conceivably may bear slight relation to those later fixed and established after hearing. The purpose of the notice is to inform interested persons of what is proposed and to afford them an opportunity to attend the hearing and to present their views to the commissioner. In the instant case the commissioner published the manual rates which he proposed should apply to the various classes of risks determined by type and territory. In addition, he proposed a plan, stated in general terms, by which the manual rates might be modified to reflect the varying risks attending the insurance of those individuals who would be subject to the plan. It appears that adequate notice to the public of the proposed rates and the plan for their possible modification was given. The statute states in reference to the notice and schedule that they "shall be in such form as the commissioner may deem expedient." The commissioner might well deem it inexpedient prior to a hearing to compute and publish a multitude of individual modifications of the manual rates under a plan which, although proposed, had not been established.

We proceed to inquire whether the commissioner has acted within his statutory authority by fixing and establishing adequate, just, reasonable, and nondiscriminatory premium charges based on fair and reasonable classification of risks. As above stated, classification of motor vehicles for rating purposes according to type and place of garaging is lawful. It is within the authority vested in the commissioner. *Brest* v. *Commissioner of Insurance*, 270 Mass. 7. The experience rating plan, while maintaining these classifications for the purpose of fixing the manual rates, modifies these rates as they apply to eligible individual owners in accordance with the past experience of these owners as to losses caused by motor vehicle accidents. The owners affected by the plan are those who have paid during the experience years a certain total premium and during the last year have maintained a certain number of motor vehicles

on the road.   For rating purposes they become members of a class distinct from owners who do not meet the eligibility requirements.   These requirements are designed to include in the class only owners whose experience has been sufficiently broad to form a fair basis for individual rating.

The master found that "Among the exhibits before the commissioner were the commissioner's statistical plan, prescribing in great detail the data to be submitted for determination of the rates, and the data, statistics and studies used in assembling and computing the manual rates. The exhibits included, in the chief examiner's report, the tabulations prepared for the commissioner by the Massachusetts Automobile Rating and Accident Prevention Bureau, herein referred to as the bureau, of the paid and outstanding losses of each insurance company writing compulsory motor vehicle liability insurance and the work of some twenty-five examiners who worked under the chief examiner to verify and check the data submitted, and to make the computations thereon.   There were also before the commissioner the automobile experience rating plans in effect in Massachusetts for 1948 and 1949 (almost precisely the same as that specifically proposed for 1950 . . .), the experience rating plan under the Massachusetts workmen's compensation plan, and several plans and studies of plans from other States in which experience rating had been applied to various forms of insurance.   Such plans included credibility tables similar to those in the rating plan for 1950, and minimum eligibility requirements.   There was a review by the bureau of the history and operation of the Massachusetts plans for 1948 and 1949 and a recommendation of the bureau that a similar plan be adopted for 1950. The following data appeared from exhibits introduced before the commissioner at his hearing.   Under the plan in 1949, 1057 eligible risks received credits, 662 received debits, and 10 had no modification.   The average experience modification for 1729 risks was .970.   In 1948, 1167 risks received credits, 624 risks received debits, and 13 had no modification.   1804 risks had an average experience modification of

.976. Over 1,000,000 risks in all were insured under compulsory insurance in each of those years."

"Also before the commissioner was the computation of the credibility factors used in the rating plan. Actuaries testified at the hearing before him to the effect that experience rating had been introduced in the automobile field in 1918 and was now used in practically all the States; that it had been used in Massachusetts workmen's compensation since 1912; that the Massachusetts rating plan was essentially the same, had the same characteristics, and utilized the same type of data as the plan in effect for a great many years in other States, modified to fit conditions peculiar to Massachusetts; that the rating plan proposed was sound and reasonable and developed in accordance with generally recognized actuarial principles; that the formulae used in the plan were well recognized and were properly applied and developed in the plan; that the operation of the plan fairly reflects the degrees of hazard of the risks subject to it; that the plan applies on precisely the same basis to all persons similarly situated who are subject to it; that under the eligibility requirements of the plan, the experience of those subject to the plan is such that weight can be given to their experience; that narrower experience would be too much the result of chance to be given weight; and that the plan gives greater weight to normal than to excess losses in order to reflect the actuarial truth that the occurrence of an accident is often more important than its size when it comes to estimating hazard."

It appears further from the findings of the master that "The eligibility limits are selected and are reasonably designed to eliminate from experience rating those insureds whose experience is so limited that their experience should not be given statistical significance," and that "The data relating to losses paid and outstanding on which the experience modification is computed have a high degree of reliability." In view of the evidence submitted it cannot be held that the new classification created by the rating plan was so lacking in reason as to be beyond the statutory power

of the commissioner, or that he was not warranted in finding that the experience of the qualified owners furnished a sufficient basis for rating them individually.

The classification does not deny to the petitioners the equal protection of the laws guaranteed by the Fourteenth Amendment to the Constitution of the United States. That article requires only that the classification "rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed, and can never be made arbitrarily and without any such basis." *Gulf, Colorado & Santa Fé Railway* v. *Ellis*, 165 U. S. 150, 155. *Hartford Steam Boiler Inspection & Ins. Co.* v. *Harrison*, 301 U. S. 459, 462. *Frost* v. *Corporation Commission of Oklahoma*, 278 U. S. 515, 522. *Brest* v. *Commissioner of Insurance*, 270 Mass. 7, 14–15, and cases cited.

No contention is made that the premium charges under the plan are not adequate to produce enough revenue to the insurance companies to pay all losses and allow a reasonable profit. They appear to be just and reasonable, being fixed in accordance with sound principles and not being excessive or more than adequate. There was evidence before the commissioner showing that actual losses resulting from the operation of taxicabs for the previous three years exceeded the provision made for losses in the manual rates by about 15% and exceeded the provision for such losses after the rates had been modified by experience rating by about 8%.

The requirement that premium charges be nondiscriminatory when applied to different classes of risks means that they be equitably adjusted and proportioned among the classes in accordance with the respective losses which reasonably are to be anticipated. *Brest* v. *Commissioner of Insurance*, 270 Mass. 7. *Schlabach* v. *Commissioner of Insurance*, 290 Mass. 585. There is no discrimination among individual owners eligible for the rating plan or between such owners as a group and noneligible owners provided that the premium charges are based on reliable evidence of experience as to losses. Here the master has found that the "data relating to losses . . . have a high degree of relia-

bility." Experience governs the rates of both eligible and noneligible owners. The fact that because of lack of individual experience the rates of one group are governed by average experience and the rates for the other depend on individual experience does not make for discrimination. *Brest* v. *Commissioner of Insurance,* 270 Mass. 7, 14–15. *Louisville Gas & Electric Co.* v. *Coleman,* 277 U. S. 32, 37. *Frost* v. *Corporation Commission of Oklahoma,* 278 U. S. 515, 522. *Hartford Steam Boiler Inspection & Ins. Co.* v. *Harrison,* 301 U. S. 459, 461–462.

It is argued that by employing a formula to determine the rates under the experience rating plan the commissioner does not "fix and establish" premium charges in compliance with the statute. The elements of the formula other than the credibility factors are the amounts of losses actually paid during the experience years and the reserves set up for the payment of unsettled claims. The credibility factors to be used are tabled in Section F of the memorandum and the amounts of losses paid and of the reserves for pending claims are recorded with the companies or with the bureau. The data used in obtaining the experience modification are the same as are used in computing that element of the manual rate termed "pure premium."

In our opinion the determination of the manual rates, supplemented by the prescribed formula for the modification of those rates in accordance with the recorded amounts of losses over the experience years, constitutes a fixing and establishment of rates within the meaning of the statute. A rate may be fixed where its elements are settled and where all that remains to be done is to combine those elements by the employment of a definite rule, or as here by mathematical process. See *Shyman* v. *Fleming,* 163 Fed. (2d) 461, 463; *Gist* v. *Rackliffe-Gibson Construction Co.* 224 Mo. 369, 385–388; *McKann* v. *Irvington,* 133 N. J. L. 63, 66–67; *Cricket* v. *State,* 18 Ohio St. 9, 21; *Holmes* v. *Republic Steel Corp.* (Ohio C. P.) 69 N. E. (2d) 396, 405; *County Commissioners of Le Flore County* v. *Babb,* 188 Okla. 686; *Flagg* v. *Columbia County,* 51 Ore. 172, 177–178. The rates in the instant case

depend not upon future factual contingencies for their determination but on present established facts. See *San Francisco Pioneer Woolen Factory* v. *Brickwedel,* 60 Cal. 166, 177.

In his report the master has referred to various errors discovered by the commissioner in the records of the various companies and to the fact that there has been delay in computing for the individual his experience modification. He has also found that the commissioner, through his examiners, systematically inspects the records, checks them for errors, and corrects such as are found. Where reserves maintained for unsettled claims are, in his judgment, excessive, they are reduced in amount. It appears from the master's report that reasonable efforts are made by the commissioner to insure the accuracy of the facts on which the rates are calculated. We find nothing in the report to indicate that errors in the statistics or inaccuracies and delays in computation of the experience modification existed to such an extent that they affect the validity of the experience rating plan. In our opinion the order of the commissioner ought not to be annulled and it is affirmed.

*So ordered.*

The second case is a bill in equity under G. L. (Ter. Ed.) c. 231A, inserted by St. 1945, c. 582, § 1, for a "binding declaration" of the "rights and duties" of the plaintiff and the defendant Hardware Mutual Casualty Company "with reference to the effect" of experience rating plans established by the commissioner of insurance for the years 1948 and 1949 relating to the classification of risks and the establishment of rates for compulsory motor vehicle liability insurance. The defendants are the commissioner of insurance and the said insurance company which is hereinafter referred to as the defendant. In addition to a declaration of the respective rights and duties of the plaintiff and the defendant under these plans the plaintiff by way of consequential relief seeks a declaration that it is entitled to a return by the defendant of excess premiums paid by the plaintiff to the defendant under the 1948 plan and that it is

not indebted to the defendant for excess premiums charged under the 1949 plan. The excess premiums to which reference is made are the additional premiums, over and above the manual rates, which, under the plans, are determined by experience modification. Each defendant has filed a demurrer, plea and answer. The case is before us on reservation and report without decision by a judge of the Superior Court on the pleadings and a statement of agreed facts, which facts the judge has found to be true.

The plaintiff contends that "the defendant commissioner of insurance failed to advertise the proposed 'Massachusetts Automobile Experience Rating Plan' as required by law and . . . that the said 'Massachusetts Automobile Experience Rating Plan' was not adopted pursuant to the provisions of aforesaid Section 113B of Chapter 175 of the General Laws. The plaintiff further contends that if the defendant commissioner of insurance claims to have adopted the said 'Massachusetts Automobile Experience Rating Plan' under the provisions of aforesaid Section 113B of Chapter 175 of the General Laws, he failed thereby to fix and establish fair and reasonable classifications of risks and adequate, just, reasonable and nondiscriminatory premium charges as required by law, in that under the provisions of the said plan no rates are fixed and established by the commissioner." These contentions refer to both the 1948 and the 1949 plans.

The plaintiff owns and operates a fleet of taxicabs principally garaged in Boston and is eligible to be classified for experience rating under each plan. It appears from the statement of agreed facts and from the documents incorporated therein by reference that the commissioner by memoranda filed after hearings ordered the establishment of experience rating plans for the years 1948 and 1949 similar in all material respects to the experience rating plan for 1950, the validity of which we have considered in the first case. Notices of the hearings which stated the schedules of proposed manual rates and referred to the experience rating plans were published in newspapers published in the

ten cities named in the statute (G. L. [Ter. Ed.] c. 175, § 113B), and supplementary notices were published in other newspapers scheduling the manual rates but without mention of the experience rating plan. As we held in the first case, the publication of these notices was in compliance with the statute.

On October 24, 1947, after hearing, the commissioner filed a memorandum establishing the 1948 rates including those fixed in accordance with the experience rating plan. The manual rate for a taxicab maintained in Boston was $370. At some time prior to January 1, 1948, the defendant notified the plaintiff that compulsory motor vehicle liability insurance on three taxicabs had been provided, and in March, 1948, three policies were delivered to it, the stated premium on each policy being $370. The plaintiff paid the amount of these premiums to the defendant on March 17, 1948. At the time the policies were issued the defendant had no actual knowledge of the fact that the plaintiff owned and operated in Boston seven additional taxicabs during the experience years 1944, 1945, and 1946. These additional taxicabs had been insured by another company. The defendant was notified of this fact "in the middle of 1948" by the Massachusetts Automobile Rating and Accident Prevention Bureau, and thereupon the defendant and the other insurance company filed with the bureau their experience data on the plaintiff's taxicabs for the experience years. On the basis of this data the bureau computed the experience modification factor claimed to be applicable to the plaintiff under the experience rating plan and on September 27, 1948, sent to the defendant a copy of the computation wherein it appeared that the experience modification factor was 1.241 for the year 1948. The defendant then charged the plaintiff an additional premium on each policy of $89.17. The plaintiff refused to pay the additional premium, the defendant issued a notice of cancellation, and, to avoid such cancellation, the plaintiff paid the additional premium.

The commissioner on October 22, 1948, filed a memorandum establishing the 1949 rates including those fixed in

accordance with the experience rating plan. Prior to January 1, 1949, the defendant notified the plaintiff that compulsory motor vehicle liability insurance had been provided for it and in February, 1949, delivered to the plaintiff one insurance policy covering its three taxicabs. The stated premium on the policy was $1,110, computed at the manual rate of $370 for each taxicab, together with an experience modification charge of $291.93, the net premium being $1,401.93. The plaintiff refused to pay the experience modification charge which, by reason of payments made by the plaintiff and its credit for 1948, was reduced to $265.18. The defendant thereupon commenced proceedings to cancel the policy, which proceedings are now pending before the board of appeal on motor vehicle liability policies and bonds. See G. L. (Ter. Ed.) c. 175, § 113D, as amended.

The statement of agreed facts contains no part of the evidence introduced at the hearings before the commissioner on which the establishment of the respective rating plans was based. No facts are stated to indicate that the classifications of motor vehicles for 1948 and 1949 according to type and territory and of owners according to loss experience under the rating plan were not fair and reasonable and that adequate, just, reasonable and nondiscriminatory premium charges were not fixed and established. See *Brest* v. *Commissioner of Insurance*, 270 Mass. 7. The establishment of the rates by the commissioner, a public official to whom is delegated the authority to fix and establish rates, is presumed to be regular and lawful in the absence of evidence to the contrary. *McCarthy* v. *Commonwealth*, 204 Mass. 482, 485. *Brest* v. *Commissioner of Insurance*, 270 Mass. 7, 17. *Lowell Co-operative Bank* v. *Co-operative Central Bank*, 287 Mass. 338, 351. *Coleman* v. *Louison*, 296 Mass. 210, 214. *American Employers' Ins. Co.* v. *Commissioner of Insurance*, 298 Mass. 161, 169. *Gahn* v. *Leary*, 318 Mass. 425, 429. It cannot be said that the experience rating plans for the years in question were not properly established according to the authority conferred by the statute. It is provided therein that "the classifica-

tions and premium charges fixed and established by the commissioner for such policies shall be used by all companies issuing such policies." The defendant therefore was required to charge the rates established by the experience rating plans. It is entitled to retain the premiums received in 1948 and to recover the premium charged in 1949.

The ground of each demurrer and plea is the alleged failure of the plaintiff to file a petition for review of the "action, order, finding or decision" of the commissioner within twenty days after each memorandum establishing the classification and rates was filed. In view of our conclusion that the facts before us are insufficient to show that the experience rating plans for 1948 and 1949 are unlawful, it is unnecessary for us to decide this question of procedure. It is plain from what has been said in both of these cases that as a practical matter the plaintiff is not entitled to a decree favorable to it in this suit, even if its method of proceeding was correct. A formal declaratory decree against it would avail it nothing. It cannot be harmed if its bill is dismissed. For reasons hereinbefore appearing, the defendant Hardware Mutual Casualty Company is entitled to recover under its prayer for relief, which we construe as a counterclaim, the excess premium charged for 1949, and is entitled to its costs.

A final decree is to be entered dismissing the plaintiff's bill and granting the defendant the relief claimed in its counterclaim, with costs to the defendant.

*So ordered.*