SOUTH SHORE NATIONAL BANK *vs.* BOARD OF BANK
INCORPORATION & another[1]
(and a companion case[2]).

Suffolk.    October 5, 1966. — November 7, 1966.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, & SPIEGEL, JJ.

*Trust Company,* Branch office.    *Board of Bank Incorporation.    Certiorari.
Administrative Matter.    Equity Jurisdiction,* Declaratory relief.    *Statute,* Construction, Repeal, Special act.

A decision by the Board of Bank Incorporation on an application of a
trust company for leave to change the location of a branch office is an
administrative decision not subject to judicial review as to the merits
by certiorari.    [365–366]

If the requirements of G. L. c. 231A can be met, a suit for declaratory
relief will lie to challenge the validity of an administrative order made
by a governmental agency.    [366]

A national bank whose application to the Federal Comptroller of the Cur-
rency for permission to locate a branch office in a certain section of a
town had been "adversely affected" by a decision of the Board of Bank
Incorporation under G. L. c. 172, § 11 (d), as appearing in St. 1961,
c. 493, § 1, allowing a petition of a Massachusetts trust company to
change the location of a branch office to the same section of that town,
and whose competitive position was endangered by such decision, was
sufficiently "aggrieved" by such decision to have standing to challenge
its validity in a suit in equity against the board and the trust company
for a declaratory decree under G. L. c. 231A; and an actual controversy
existed between the parties as required by c. 231A for the maintenance
of the suit.    [367–368]

A demurrer to the bill in a suit in equity for declaratory relief should not
be sustained and the bill dismissed on the ground that the plaintiff can-
not prevail on the merits; a declaratory decree determinative of the
merits should be entered.    [368]

In St. 1961, c. 493, § 1, revising the laws relative to trust companies,
G. L. c. 172, and providing that branch offices thereof should be located
in the same counties as their main offices respectively, the omission of
clauses contained in previous revisions of such laws specifically ex-
empting from the provisions thereof as to the location of branch offices
branches established prior thereto did not express a legislative intent to
repeal special acts of the Legislature under which a small number of

---

[1] Rockland Trust Company.

[2] Same *vs.* same.

branch offices of trust companies were located in counties other than the counties in which their main offices were respectively located, or an intent to have such branch offices cease operations. [369–370]

The Board of Bank Incorporation had authority under G. L. c. 172, § 11 (d), as appearing in St. 1961, c. 493, § 1, to permit a trust company, which had established a branch office in a town in a county other than the county of its principal office pursuant to a special act of the Legislature, to change the location of its branch office to another place in that town. [371]

BILL IN EQUITY filed in the Superior Court on July 26, 1965.

PETITION for a writ of certiorari filed in that court on the same date.

The cases were heard by *Kalus, J.,* on demurrers.

*Elliott V. Grabill (Morton H. Aronson* with him) for South Shore National Bank.

*Noel G. Posternak (Lawrence M. Levinson* with him) for Rockland Trust Company; *David W. Hays,* Assistant Attorney General, for Board of Bank Incorporation, also with him.

SPIEGEL, J.   These cases are here on appeals from (1) an interlocutory decree sustaining demurrers without leave to amend and a final decree dismissing the bill in a suit for declaratory relief, and (2) from orders sustaining demurrers without leave to amend in a certiorari proceeding. The appeals have been consolidated.

### THE CERTIORARI PROCEEDING.

The material allegations in the petition are as follows: South Shore National Bank (South Shore) is a national banking corporation with its principal place of business in Norfolk County.   Rockland Trust Company (Rockland) is a trust company incorporated in Massachusetts with its principal place of business in Plymouth County.   Rockland filed a "petition" with the board requesting permission to move its Norfolk County branch office from Stagecoach Way in Cohasset to Route 3A near the intersection of Beechwood Street, a section of Cohasset known as Cushing Plaza.   The board held a hearing on this "petition" on June 29, 1965.   South Shore appeared at that hearing and

protested the proposed move of Rockland on the ground that the board was without legal authority to permit such a move "since a Plymouth County Bank cannot legally establish, operate or move a branch in Norfolk County." On July 20, 1965, the board voted to authorize Rockland to move its branch office as it had requested in its "petition."

South Shore has applied to the Federal Comptroller of the Currency for permission to have a branch office near Cushing Plaza, the same banking area into which Rockland received permission to move its branch office. It alleges that its rights are adversely affected by the board's action.

Rockland and the board's demurrers in effect are on the ground, inter alia, that a petition for a writ of certiorari does not lie.

General Laws c. 172, § 11 (d), as appearing in St. 1961, c. 493, § 1, provides: "With the approval of the board of bank incorporation, such corporation may change the location of its principal office or any branch office, when the public convenience so requires, to any place where a branch office may be established and operated by it . . . . No such corporation shall establish a branch office except as provided in this section."

The establishment and operation of new branch offices are governed by G. L. c. 172, § 11 (a), as appearing in St. 1961, c. 493, § 1: " (a) After such notice and hearing as the board may prescribe, a trust company may, with the approval of the board, establish and operate one or more branch offices in the city or town where its principal office is located, or in any other city or town in the same county having no commercial banking facilities or having banking facilities which, in the opinion of the board, are inadequate for the public convenience. . . ."

In *Natick Trust Co.* v. *Board of Bank Incorporation,* 337 Mass. 615, and *City Bank & Trust Co.* v. *Board of Bank Incorporation,* 346 Mass. 29, we held that a decision by the board on an application for leave to establish a branch office is an administrative decision not subject to judicial review as to the merits by certiorari. Such a holding is equally

applicable to a decision by the board on an application for leave to move a branch office. See *The First Church of Christ, Scientist, in Boston, Mass.* v. *Alcoholic Beverages Control Commn.* 349 Mass. 273; *Moskow* v. *Boston Redevelopment Authy.* 349 Mass. 553, 570–571. The demurrers to the petition for a writ of certiorari were properly sustained.

*Orders affirmed.*

### The Suit for Declaratory Relief.

The allegations in this suit are substantially the same as those in the petition for a writ of certiorari and therefore do not require repetition.

Rockland assigns as one ground for its demurrer that "The Petitioner does not have the right to challenge the decision of the [b]oard . . . through a Petition for Declaratory Judgment . . . ." The board demurs on similar grounds.[3] Rockland and the board argue in their brief that "the declaratory procedure cannot be used to circumvent those cases which hold that nonadjudicatory administrative decisions by the [b]oard . . . are not judicially reviewable," citing *The First Church* and *Moskow* cases. Those decisions only hold that a petition for a writ of certiorari is not a proper procedure to challenge an administrative decision. If the requirements of G. L. c. 231A can be met, a suit for declaratory relief will lie to challenge the validity of an administrative order made by a governmental agency. *Treasurer of Worcester* v. *Department of Labor & Indus.* 327 Mass. 237, 240. See *Franklin Fair Assn. Inc.* v. *Secretary of the Commonwealth,* 347 Mass. 110, 113.

Rockland and the board also demur on the grounds that South Shore does not have standing to challenge the board's action and that no actual controversy exists between the parties. In a suit for a declaratory decree the issue of standing is closely related to the issue whether an actual

---

[3] "The petition for declaratory judgment does not set forth facts sufficient to show that the petitioner is a party entitled to maintain this action."

controversy exists between the parties and we deal with them together.[4]

South Shore alleges in its bill that its application to the Federal Comptroller of the Currency for permission to have a branch office near Cushing Plaza has "been adversely affected by the action of the [b]oard . . . in hearing and allowing the petition of Rockland . . . to move its branch office in Cohasset to Cushing Plaza." Economic injury in itself is not sufficient, "[a]part from special circumstances . . ." to confer standing to challenge an administrative action. *Nantucket Boat Inc.* v. *Woods Hole, Martha's Vineyard & Nantucket S.S. Authy.* 345 Mass. 551, 554. But, on the other hand, South Shore is part of an industry in which competition is regulated and in view of the special circumstances indicated by the facts alleged, we are of opinion that it is sufficiently "aggrieved" to have standing to challenge the action which threatens its competitive position. *A. B. & C. Motor Transp. Co. Inc.* v. *Department of Pub. Util.* 327 Mass. 550, and cases cited. See Jaffe, Judicial Control of Administrative Action, p. 509. We noted in *Chicopee Co-op. Bank* v. *Board of Bank Incorporation,* 347 Mass. 744, 752, that "responsibility is confided to the board to promote, within its statutory powers, a sound banking system which will provide for the needs of the people and business, and, at the same time, will encourage reasonable competition and discourage monopolies." When considering changes in branch office locations under G. L. c. 172, § 11, the board must take into account the effect such moves will have on competition between banks, under the broad requirement that the "public convenience" be served. Certainly a bank whose competitive position is endangered by the board's approval of a change in location of a branch of

---

[4] Other grounds for the demurrers, that the bill "does not show that any injustice has been done in relation to any substantial rights of the" plaintiff, that the plaintiff is "not injured," and therefore "cannot be heard to complain," and that the plaintiff "does not have sufficient interest in the subject matter contained in the . . . [bill] to entitle it to maintain the action" can, in this case, be subsumed into the categories of "standing" and "actual controversy."

a competing bank has a sufficient interest in the board's action to bring this suit. See *North Fed. Sav. & Loan Assn.* v. *Becker, Director of Financial Insts.* 24 Ill. 2d 514. Compare *American Sur. Co.* v. *Jones, Director of Ins.* 384 Ill. 222.

We also hold that an actual controversy exists between the parties, for the same reasons that South Shore has standing to challenge this action of the board. "We think a pleading is sufficient if it sets forth a real dispute caused by the assertion by one party of a legal relation, status or right in which he has a definite interest, and the denial of such assertion by another party also having a definite interest in the subject matter, where the circumstances attending the dispute plainly indicate that unless the matter is adjusted such antagonistic claims will almost immediately and inevitably lead to litigation." *School Comm. of Cambridge* v. *Superintendent of Schs.* 320 Mass. 516, 518. South Shore is here denying the right of the board to approve Rockland's request for a change in location of its Cohasset branch.

The remaining grounds for the demurrers only raise the issue of the correctness of the declaration which South Shore seeks.

"Ordinarily a demurrer cannot properly be sustained to a bill for a declaratory decree on the ground that the court does not agree with the proposition for which the plaintiff contends. Usually a declaratory decree should be made in any event." *County of Dukes County* v. *New Bedford, Woods Hole, Martha's Vineyard & Nantucket S.S. Authy.* 333 Mass. 405, 406, cited in *Franklin Fair Assn. Inc.* v. *Secretary of the Commonwealth,* 347 Mass. 110, 113. The demurrers should have been overruled.

It is quite clear from the pleadings that there is no substantial dispute over the material facts and that the controversy centers on an interpretation of the pertinent statutes. In addition, the parties have argued the merits of the controversy. Consequently we decide the case on its merits. *Trustees of Reservations* v. *Stockbridge,* 348 Mass. 511, 513.

South Shore's main contention is that the board was not authorized by G. L. c. 172, § 11, to grant permission to Rockland to move its Norfolk County branch to another location within Norfolk County. It argues as follows: § 11 (d) only permits change of location of a branch office "to any place where a branch office may be established or operated" by the bank; § 11 (a) only permits the establishment and operation of branches "in the city or town where its principal office is located, or in any other city or town in the same county . . ."; the principal office of Rockland is in Plymouth County; therefore § 11 (d) does not permit it to change the location of the branch in question to a place in Norfolk County.

Rockland established its Cohasset branch under the authority of St. 1932, c. 100.[5] At that time branch offices could be located only in the city or town of the main office (St. 1902, c. 355, as amended by St. 1908, c. 520, § 15; G. L. c. 172, § 45, as amended by St. 1928, c. 285), and thus a special act was needed to permit Rockland to set up a branch outside of the town of Rockland. The general restriction limiting the establishment of branches to the city or town of the main office was relaxed by St. 1934, c. 349, § 21, which permitted branches in the same county as that of the main office. This county rule was modified by St. 1946, c. 87, § 2, and modified again by St. 1957, c. 1.[6] The present county rule is G. L. c. 172, § 11, as appearing in St. 1961, c. 493, § 1.

South Shore points out that the 1961 revision of the banking statutes here in question omitted clauses found in the earlier revision of those statutes which specifically exempted from their provision branches established prior to the particular revision.[7] It then argues in its brief, "It is

---

[5] "The Rockland Trust Company, of Rockland, may, subject to the approval of the board of bank incorporation, maintain a branch office in the town of Cohasset."

[6] These modifications are not material here.

[7] E.g. St. 1934, c. 349, § 21, "No such corporation shall maintain a branch office except as provided . . . but the restrictions in this section shall not extend to branch offices authorized prior to June first, nineteen hundred and thirty-four."

notable that the exemption in the prior law, which excepted from the application of existing law branches authorized prior to 1934, is omitted. The Legislature knew how to include such an exemption and had done so previously. Its omission in the present 1961 recodification is a clear expression of the legislative intent no longer to exempt such branches from the present 1961 law.''

We do not agree that the omission referred to is a clear expression of legislative intent to repeal the special act under which Rockland operates its Cohasset branch.

If the Legislature intended a branch office to cease operation, an abrupt change in the status quo, it seems to us that the normal way to accomplish that result would be to use specific language to that effect. We note that a clear expression of such an intent is shown in St. 1957, c. 1, § 6, which specifically provided for the discontinuance of branch offices of a bank which merged into a bank located in a different county.

We believe that in those instances, cited by South Shore, where the Legislature specifically exempted established banks from the effect of a new statute, all doubt as to the legislative intent was completely removed. However, the omission of such a specific exemption in the 1961 revision does not impel us to rule that the Legislature intended that an existing branch of a trust company located outside the county of its main office must cease operation.

South Shore also argues that the 1961 revision of the trust company law was a comprehensive recodification, ''covering a whole field, and all prior law contrary to this legislation was repealed.'' It maintains that ''when a statute has been enacted which is designed to embrace the whole subject to which it relates, all previous provisions of common law or statutory law, including Special Acts, are repealed and no longer operative with respect to that subject,'' and cites many cases in support of this proposition. This argument ignores the statement by Chief Justice Shaw in *Brown* v. *Lowell*, 8 Met. 172, 175 (a case included in those cited by the plaintiff in support of the foregoing argument)

that "It would be a question depending upon a careful comparison of the two acts, and the objects intended to be accomplished, whether the general act must be deemed an implied repeal of the special prior act. In general, we should think it would require pretty strong terms in the general act, showing that it was intended to supersede the special acts, in order to hold it to be such a repeal." The existence of a small number of banking branches, established by special act outside the county of the main office of the bank, is not so repugnant to the general act requiring branches to be established in the same county of the main office that the special acts should be deemed repealed. We believe that a clearer expression of such a legislative intent is required and that the Legislature did not intend to abolish those branches which operated outside the county of the main office.

Having reached that result we are unable to conclude that the Legislature intended that a branch bank should not be allowed to change its location within the county where it was originally given special permission to operate. Obviously, there are circumstances wherein such a branch office might have to change its original location. For example, its land might be taken by eminent domain, its lease might lapse, or population and traffic conditions might change so that the branch would no longer be serving the banking needs of the public. If a bank is authorized to operate a branch in a particular locality, the board should have the authority to permit it to be located within that locality so that it best serves the public.

We are of opinion that the Legislature did not withdraw the authority for Rockland to establish and maintain a branch office in Cohasset by the enactments subsequent to St. 1932, c. 100. Thus the town of Cohasset is a "place where a branch office may be established and operated" by Rockland within the meaning of G. L. c. 172, § 11 (d), and the board had authority to permit Rockland to change the location of its Cohasset branch from Stagecoach Way to Cushing Plaza.

The interlocutory and final decrees are reversed. An interlocutory decree is to be entered overruling the demurrers. A final decree is to be entered declaring that the Board of Bank Incorporation does have the authority to approve the change of location of the branch of the Rockland Trust Company within the town of Cohasset.

<div align="right">

*So ordered.*