WESTLAND HOUSING CORPORATION & others *vs.*
COMMISSIONER OF INSURANCE & another.

Suffolk.    February 8, 1967. — April 13, 1967.

Present: SPALDING, WHITTEMORE, KIRK, SPIEGEL, & REARDON, JJ.

*State Administrative Procedure Act.    Equity Jurisdiction,* Declaratory
relief, Review of decision of Commissioner of Insurance.    *Insurance,*
Workmen's compensation insurance, Rating.    *Administrative Matter.*
*Corporation,* Corporate entity.

G. L. c. 152, § 52D, even as amended by St. 1962, c. 342, does not require
a hearing by the Commissioner of Insurance, nor provide for an "ad-
judicatory proceeding" before him within § 1 of the State Administra-
tive Procedure Act, G. L. c. 30A, nor give an insured employer a right
under c. 30A, § 14, to judicial review of action of the Commissioner,
with respect to an attack by the insured upon the validity of a rating
rule itself, as distinguished from putting in issue the manner in which
the rating rule has been applied to the insured.    [377–378, 380]
There was no assignment of a workmen's compensation insurance risk to
an insurance company under G. L. c. 152, § 65A, nor right of appeal by
the employer to the Commissioner of Insurance under § 65K and hear-
ing by him as an "adjudicatory proceeding" within § 1 of the State
Administrative Procedure Act, G. L. c. 30A, nor right of the employer
to judicial review under c. 30A, § 14, of the decision of the Commis-
sioner after hearing, where it appeared that there was no certification
by the Division of Industrial Accidents to the Commissioner or designa-
tion of an insurer by him as required by § 65A, but instead an assign-
ment by a certain rating bureau pursuant to a practice of several years
standing agreed upon among the Division, the Commissioner and such
bureau [378–380]; WHITTEMORE, J., joined by SPALDING, J., concurring
in the result, expressed the opposite opinion on this point.
The provision of G. L. c. 152, § 52, for judicial review of the "opinion"
of the Commissioner of Insurance as to premiums for workmen's com-
pensation insurance did not preclude maintenance of a suit in equity
for declaratory relief respecting the validity of a rating rule of which
the plaintiffs, insured employers, first became aware when it was applied
to them several years after it had been approved by the Commissioner.
[381–382]
Employers insured under workmen's compensation policies had standing
in the circumstances to maintain a suit in equity against the Commis-
sioner of Insurance and the insurer for declaratory relief as to the
validity of a rating rule approved by the Commissioner which the plain-
tiffs contended was unfairly discriminatory and produced excessive rates.
[383–384]

A certain workmen's compensation insurance rating rule under which the loss experiences of several corporations controlled by the same persons were combined in adjusting their premiums was not "unfairly discriminatory" and did not result in "excessive" rates, and was not invalid as contrary to G. L. c. 152, § 52.   [387]

PETITION filed in the Superior Court on October 11, 1962.

Following the decision of this court reported in 346 Mass. 556, the case was heard by *Kalus, J.*

*Herbert P. Wilkins* for the intervener, Massachusetts Workmen's Compensation Rating and Inspection Bureau & another (*David W. Hays,* Assistant Attorney General, for the Commissioner of Insurance, with him).

*John M. Reed* for the plaintiffs.

*Sumner H. Babcock & Richard M. Harter* for National Council on Compensation Insurance, amicus curiae, submitted a brief.

SPIEGEL, J.   This is a petition for review under G. L. c. 30A, § 14, and G. L. c. 152, § 65M, "so far as applicable," and a suit for declaratory relief under G. L. c. 231A.   When the case was here before we remanded it to the Superior Court because the "record . . . [was] devoid of evidence from which we . . . [could] decide the jurisdictional question." *Westland Housing Corp.* v. *Commissioner of Ins.* 346 Mass. 556, 557.

The plaintiffs amended their petition in order to state an additional basis for jurisdiction under G. L. c. 231A.   The Hanover Insurance Company (Hanover) was added as a defendant.   The case was tried in the Superior Court on oral testimony plus a statement of agreed facts which incorporated a number of exhibits.   The trial judge made findings, rulings and an order for decree.   A final decree was entered setting aside the order of the Commissioner of Insurance (Commissioner) and ordering the Massachusetts Workmen's Compensation Rating and Inspection Bureau (bureau), the intervener, to "establish rates for each of the petitioners as separate risks."   The Commissioner, Hanover, and the bureau (hereinafter referred to as the defendants) appealed from the final decree.   The evidence is reported.

The judge found that the plaintiffs "are Massachusetts corporations whose risks were assigned by the Massachusetts Voluntary Stock Pool for Assigned Workmen's Compensation Risks." A predecessor of Hanover "issued policies on the . . . [plaintiffs] as assigned risks. The . . . [plaintiffs] objected to an experience rating modification issued by the . . . [bureau] to be used by . . . Hanover in determining premiums and protested to the Commissioner. A conference was held on January 28, 1962, by a Deputy Commissioner at which the Bureau and . . . Hanover were represented by employees. The Deputy Commissioner on June 29, 1962, upheld the Bureau, and the . . . [plaintiffs] appealed to the Commissioner under . . . [G. L. c. 26, § 7]. On September 12, 1962, the Commissioner affirmed the action of the Deputy Commissioner."

The findings of the judge, from which he concluded that the plaintiffs were "assigned risks within the purview of" G. L. c. 152, § 65A, are considered below. He also concluded that the plaintiffs "have complied with the appropriate requirements concerning the time and manner of filing appeals to the Commissioner . . . [and] have fully complied with the appropriate requirements concerning the time and manner in respect of their appeal to the Superior Court, as provided in . . . [G. L. c. 152, § 65M]."

The judge ruled that "[t]he decision of the Commissioner . . . was reached in an adjudicatory proceeding" within G. L. c. 30A, § 1 (1), that the plaintiffs had standing to seek review of that decision in the Superior Court under G. L. c. 30A, § 14, and that they had otherwise "complied with the appropriate requirements concerning the time and manner of" seeking review under said section.

He also ruled that the decision of the Commissioner was a regulation within the meaning of G. L. c. 30A, § 1 (5), and that G. L. c. 30A, § 7, provides the plaintiffs with "standing to seek a declaration of rights" under G. L. c. 231A.

He then ruled "that (a) the provision in Section III, Rule 9 of the experience rating plan established by the . . . [bureau], . . . 'that combination shall be made as respects

risks in each of which the same person or group of persons, or corporation owns a majority interest,' is invalid as applied to the . . . [plaintiffs]; (b) the premiums which have been charged to each of the . . . [plaintiffs] through the application of this provision, are unreasonable, unfairly discriminatory and therefore unlawful."

## I. JURISDICTION.

The plaintiffs assert that "there are two adequate bases of jurisdiction — one the statutory review under G. L. c. 30A, § 14, and the other the controversy concerning the validity of the rule in question."

A. Review under the State Administrative Procedure Act.

Review of "a final decision of any agency in an adjudicatory proceeding" may be had by "any person . . . aggrieved" thereby under G. L. c. 30A, § 14. "Adjudicatory proceeding" is defined in G. L. c. 30A, § 1, as "a proceeding before an agency in which the legal rights, duties or privileges of specifically named persons are required by constitutional right or by any provision of the General Laws to be determined after opportunity for an agency hearing."

The plaintiffs argue that G. L. c. 152, §§ 52D and 65K, required the "hearing" which they had with the Commissioner.

Before the amendment of 1962 (St. 1962, c. 342) § 52D governed only appeals by "[a]ny member of or subscriber to a rating organization . . . from the action or decision of such rating organization in approving or rejecting any proposed change in or addition to the filings of such rating organization." It did not require or permit a hearing for the purpose of determining the rights of persons such as the plaintiffs who are customers of the insurance companies which are the members or subscribers of rating organizations. After the 1962 amendment, § 52D permitted "any insured affected by a rate made by" a rating organization or insurer to challenge the "manner in which such

rating system has been applied in connection with the insurance afforded him'' and to appeal to the Commissioner if, after a hearing with the rating organization or insurer, the insured was ''affected by the action of such rating organization or such insurer.'' After a hearing the Commissioner could either affirm or reverse such action.

Even if we assume that the 1962 amendment became effective in time to govern the action of the Commissioner in the instant case,[1] § 52D, as amended, provides only for an adjudicatory proceeding on the issue of the manner in which a rating rule has been applied to an insured. It does not provide for a proceeding to challenge the validity of the rating rule itself.

Section 65K permits an appeal to the Commissioner by ''[a]ny employer to whom a policy is issued pursuant to section sixty-five A . . . on the ground that the premium charged . . . is not reasonable or is unfairly discriminatory, and said commissioner may . . . after a hearing . . . approve or disapprove the premium charged.''

Section 65A[2] provides for the assignment of an employer, whose application for workmen's compensation insurance has been rejected by two insurers, to an insurer which is

---

[1] Statute 1962, c. 342, was approved April 13, 1962, and became effective July 12, 1962. The plaintiffs complained to the Commissioner on October 30, 1961, and the ''hearing'' was held by the Commissioner on January 18, 1962. The policies became effective on July 15 of 1960 and 1961. Hence, the statute would not apply unless it were construed to apply retroactively.

[2] ''Any employer whose application for workmen's compensation insurance has been rejected or not accepted within five days by two insurers may appeal to the division, and if it shall appear that such employer has complied with or will comply substantially with all laws, orders, rules and regulations in force and effect relating to the welfare, health and safety of his employees, and shall not be in default of payment of any premium for such insurance, then the division shall certify to the commissioner of insurance that such employer is entitled to workmen's compensation insurance. The commissioner of insurance shall thereupon designate an insurer who shall forthwith, upon the receipt of the payment for the premium therefor, issue to such employer a policy of insurance contracting to pay the compensation provided for by this chapter. The commissioner of insurance shall make equitable distribution of such risks among insurers in such manner that, so far as practicable, no insurer will be assigned a larger proportion of premiums under assigned policies during any calendar year than that which the total of workmen's compensation premiums written in the commonwealth by such insurer during the previous calendar year bears to the total workmen's compensation premiums written in the commonwealth by all insurers during the previous calendar year.''

designated by the Commissioner to issue a policy to such an employer. The statute provides an explicit procedural framework in which such rejected risks are to be assigned. The employer, upon rejection by two insurers, must first appeal to the Division of Industrial Accidents. The division is then required to certify to the Commissioner "that such employer is entitled to workmen's compensation insurance" after the division has determined that the employer has met the conditions set out in the statute. The Commissioner is then required to "designate an insurer" who must issue a policy to the employer upon "receipt of the payment for the premium therefor."

The defendants argue that "The evidence fails to show the occurrence of two significant events which are essential to an assignment under section 65A. They are: (1) The Division of Industrial Accidents did not make the necessary statutory findings and certify to the Commissioner of Insurance that any of the . . . [plaintiffs] was entitled to workmen's compensation insurance, and (2) The Commissioner of Insurance did not 'designate an insurer' to issue to any . . . [plaintiff] a policy of insurance contracting to pay for workmen's compensation losses."

The findings of the judge show clearly that there was no compliance with the provisions of § 65A: the division "did not so certify, but referred these . . . [plaintiffs] to the Bureau; . . . a representative of the Division told . . . [the plaintiffs] that under an agreement between the Division, the Commissioner . . . and the Bureau, the Bureau would assign the risks; . . . personnel in the office of the Commissioner, including counsel to the Commissioner, likewise informed . . . [the plaintiffs] that the Bureau would assign the risks; . . . the Commissioner has not designated an insurer for an assigned risk since 1951; . . . the Division has not certified a rejected risk to the Commissioner since 1951; . . . the usual practice of the Division, upon presentment by an employer of two rejection letters is to refer the applicant to the Bureau; and . . . in accordance with instructions from the Division a representative of the

. . . [plaintiffs] presented two rejection letters from each of the . . . [plaintiffs] to the Bureau.''

The judge nevertheless ruled that ''these . . . [plaintiffs] were in substantial compliance with all the requirements of § 65A . . . . The policies were assigned to . . . [the plaintiffs] pursuant to a procedure and policy sanctioned and imposed upon applicants for assigned risk insurance by the Commissioner for many years, and . . . [the] Commissioner cannot now in equity assert his own technical non-compliance with . . . [G. L. c. 152, § 65A] in bar of any rights otherwise accruing to . . . [plaintiffs] . . . entitled to . . . [i]nsurance by way of the assigned risk provisions of . . . [G. L. c. 152, §§ 65A–65N].''

We do not agree that the noncompliance with § 65A was merely ''technical.'' It was total. When the Legislature provides specific procedures to be followed in assigning risks to insurance companies it is not to be presumed that these procedures may be disregarded.

In conclusion we are of opinion that neither § 52D nor § 65K required the ''hearing'' which was held.[3] Thus there was no adjudicatory proceeding and so no right to review under G. L. c. 30A, § 14.

B. The Suit for Declaratory Relief.

The judge ruled that ''[t]he decision of the Commissioner falls within the term 'Regulation,' as defined . . . [in G. L. c. 30A, § 1 (5)] and . . . [plaintiffs'] amended petition which seeks judicial review under . . . [G. L. c. 30A, § 7] gives the . . . [plaintiffs] standing to seek a declaration of rights under . . . [G. L. c. 231A],'' citing *Kneeland Liquor, Inc.* v. *Alcoholic Beverages Control Commn.* 345 Mass. 228.

General Laws c. 30A, § 7, provides: ''Unless an exclusive mode of review is provided by law, judicial review of any regulation may be had through petition for declaratory relief in the manner and to the extent provided under . . . [G. L. c. 231A].'' It should be noted that this section does

---

3 The plaintiffs do not argue that the hearing was constitutionally required.

not specify *who* is entitled to obtain judicial review of a regulation through a suit for declaratory relief. It also specifically limits declaratory relief to "the manner and to the extent provided" by c. 231A. Thus it is clear that even though an administrative action may conform to the definition of "regulation" in G. L. c. 30A, § 1 (5), it is not automatically reviewable by a suit for declaratory relief. We believe that the purpose of § 7 is to negate an inference, which might otherwise be drawn from § 14, that *only* a "final decision of any agency in an adjudicatory proceeding" may be judicially reviewed. Consequently, we do not find it necessary to consider the defendants' argument that the action of the Commissioner was not a "regulation," as found by the judge. The *Kneeland* case held only that a certain action by an administrative agency was a "regulation" for the purposes of G. L. c. 30A, § 2, and that there should have been a hearing as required by that section. *Kneeland Liquor, Inc.* v. *Alcoholic Beverages Control Commn.* 345 Mass. 228, 233–234. The case was not concerned with the reviewability of the regulation by suit for declaratory relief.

The defendants also argue that "[d]eclaratory relief should be denied because the . . . [plaintiffs] had other remedies available to them." General Laws c. 152, § 52, provides for filing with the Commissioner of Insurance of "classifications of risks and premiums relating thereto" by insurers or by a rating organization of which the insurer is a member or subscriber, "which shall not take effect until approved by said commissioner as not excessive, inadequate or unfairly discriminatory for the risks to which they respectively apply. . . . *Upon petition of the company or of any other party aggrieved the opinion of said commissioner shall be subject to review by the supreme judicial court.* Said commissioner may withdraw his approval" (emphasis supplied).

Ordinarily declaratory relief is not available to bypass an administrative remedy, even if the administrative remedy is no longer available because it had not been pursued

within the time prescribed. *Goldman* v. *Planning Bd. of Burlington,* 347 Mass. 320, 326. But "[i]n certain exceptional instances this court has upheld the granting of declaratory relief in the discretion of the court," *Second Church in Dorchester* v. *Boston,* 343 Mass. 477, 479, even where a statute purports to make administrative remedies exclusive. *Madden* v. *State Tax Commn.* 333 Mass. 734, 736–737.

We are of opinion that the remedy provided in G. L. c. 152, § 52, does not preclude these plaintiffs from declaratory relief. The experience rating plan contained in Rule 9 of § III, which was applied to the plaintiffs for the first time in 1960, was filed by the rating bureau and approved by the Commissioner in 1955. From the record before us it does not appear that any hearing was held to determine the validity of Rule 9 at that time or that any notice was given that the experience rating plan was being reviewed by the Commissioner. Nor does the record show that in approving the plan in 1955 the Commissioner made any findings upon which judicial review could be based.[4]

There appears to be no statutory requirement for an annual or other periodic review of the experience rating plan, nor does G. L. c. 152 permit an employer to challenge a rate once it has been approved. (Cf. the provision of G. L. c. 152, § 52D, permitting a member of a rating organization to challenge an existing rate or proposed change.)

We think that the provision for review in § 52 was designed to permit review by those persons who were either parties to the proceedings before the Commissioner or who were at least on notice that their interests might be affected. We do not interpret it to be the only remedy of an employer who first becomes aware of the rating rule through its application to him several years after its approval by the Commissioner.

---

[4] The record does show that as early as 1959 a public hearing was held on a filing by the bureau in which experience rating plan factors were submitted for approval. But it is not shown that the rule here in question was reviewed at that time.

It is settled that a suit for declaratory relief will lie to challenge the legality of an administrative action even though such action is neither an "adjudication" nor the promulgation of a "rule," provided that the other requirements of maintaining such a suit can be met. *South Shore Natl. Bank* v. *Board of Bank Incorporation,* 351 Mass. 363, 366, and cases cited. The central problem here, as in the *South Shore* case, is whether the plaintiffs have standing to maintain their suit.

In *Circle Lounge & Grille, Inc.* v. *Board of Appeal of Boston,* 324 Mass. 427, 430–432, we held that "we must inquire what peculiar legal rights were intended to be given" to a plaintiff by a statute which permitted an appeal by "[a]ny person aggrieved" by a decision of a zoning board of appeal. Even though the plaintiffs are not bringing this appeal under G. L. c. 152, § 52, the same considerations are applicable in determining whether they have standing to bring this suit for declaratory relief as would apply in determining whether they were parties aggrieved within the meaning of that statute. In both instances we must look to the statutory purposes. *South Shore Natl. Bank* v. *Board of Bank Incorporation, supra,* at 367–368. See *Circle Lounge & Grille, Inc.* v. *Board of Appeal of Boston, supra; A. B. & C. Motor Transp. Co. Inc.* v. *Department of Pub. Util.* 327 Mass. 550, 551–552; *Associated Indus. of N. Y. State, Inc.* v. *Ickes,* 134 F. 2d 694, 705–706 (2d Cir.); Jaffee, Judicial Control of Administrative Action, 507–508.

As employers, the plaintiffs are required either to take out workmen's compensation insurance or to qualify as self-insurers. G. L. c. 152, § 25A. The rates charged to employers by workmen's compensation insurers must be approved by the Commissioner "as not excessive, inadequate or unfairly discriminatory" before such rates may take effect. G. L. c. 152, § 52. That statutory standard obviously has as one of its purposes the protection of employers from being charged excessive or unfairly discriminatory rates. We are of opinion that each plaintiff would be a "party aggrieved" within G. L. c. 152, § 52, if this were

an appeal under that section, see *Brest* v. *Commissioner of Ins.* 270 Mass. 7, 19, and has standing to maintain this suit for declaratory relief. See *A. B. & C. Motor Transp. Co. Inc.* v. *Department of Pub. Util., supra; Bay State Harness Horse Racing & Breeding Assn. Inc.* v. *State Racing Commn.* 342 Mass. 694, 701–703; *South Shore Natl. Bank* v. *Board of Bank Incorporation, supra; Associated Indus. of N. Y. State, Inc.* v. *Ickes, supra; Pittsburgh* v. *Federal Power Commn.* 237 F. 2d 741, 748–749 (D. C. Cir.); *Doehla Greeting Cards, Inc.* v. *Summerfield,* 116 F. Supp. 68, 73–74 (D. D. C.); Davis, Administrative Law Treatise, § 22.12. Cf. *Circle Lounge & Grille, Inc.* v. *Board of Appeal of Boston, supra; Massachusetts Soc. of Optometrists* v. *Waddick,* 340 Mass. 581, 584; *Nantucket Boat Inc.* v. *Woods Hole, Martha's Vineyard & Nantucket S.S. Authy.* 345 Mass. 551, 554; *Shaker Community, Inc.* v. *State Racing Commn.* 346 Mass. 213.

## II. THE SUBSTANTIVE ISSUE.

The plaintiffs claim that Rule 9 of § III of the experience rating plan is unfairly discriminatory, resulting in excessive rates, and hence not permitted by G. L. c. 152, § 52.

The defendants, on the other hand, argue that the Commissioner was "vested" with "discretion" in passing upon classifications of risks and premiums and that we should not "substitute . . . [our] judgment for that of an administrative agency in rate making matters, unless a claim of unconstitutionality is asserted . . . [or] the administrative action is without foundation on the record," citing *Massachusetts Bonding & Ins. Co.* v. *Commissioner of Ins.* 329 Mass. 265, 276–277, and other cases. We agree with the principle but believe that it does not prevent us from considering whether the rule in question is in violation of the statute. As we said in the *Massachusetts Bonding* case, *supra,* at 273, our task is to determine "whether the commissioner has complied with the standards prescribed by the statute," although "we are not thereby authorized to substitute our judgment as to the reasonableness or adequacy of the premium charges for that of the commis-

sioner." See *Brest* v. *Commissioner of Ins.* 270 Mass. 7, 13.

In the instant case we are asked to examine a rule by which the experience of several commonly controlled corporations is combined for the purpose of adjusting their premiums. The plaintiffs urge us to affirm the decision of the judge that the rule is invalid as a matter of law. In so far as the validity of the rule depends on factual findings, the scope of our review is limited to determining whether the Commissioner's "findings had reasonable support in the evidence." *Insurance Co. of No. America* v. *Commissioner of Ins.* 327 Mass. 745, 753. But the conformity of a general "classification of risk" rule to the standards of G. L. c. 152, § 52, is somewhat different from the question of whether a given premium rate is "excessive, inadequate or unfairly discriminatory." In the latter situation the Commissioner must consider a number of financial and other technical facts in making an overall judgment as to the "reasonableness" of a given rate structure. In the former situation, general and fundamental issues are presented for consideration. The reasonableness of the rule depends on general concepts of the control which majority shareholders can exercise over a corporation. This, in turn, has a deep effect on the factors which influence the premiums charged for workmen's compensation insurance. It is not merely a weighing of factual data.

The same considerations apply to the defendants' argument that the plaintiffs have the burden of proving the unreasonableness of the rule. In so far as the issue is the validity of the rule as a matter of law, the locus of the burden of proof is irrelevant. Cf. *Metropolitan Dist. Commn.* v. *Department of Pub. Util. ante,* 18, 24–25.

We do not interpret the plaintiffs' attack on the rule as a challenge to the general practice of rating risks according to actual loss experience. The validity of experience rating modification has been upheld for automobile liability insurance. *Century Cab Inc.* v. *Commissioner of Ins.* 327 Mass. 652, 656–663. They do contend, however, that separate corporations should not have their loss experiences com-

bined on the sole ground that the same group of persons owns controlling interests in the corporations.

The defendants, on the other hand, argue that common controlling ownership is a reasonable basis upon which to combine the loss experiences of several corporations because ownership is the right to control.[5] The right to control in this context means the right to elect directors who in turn select the active managers of the corporation. The managers have the power to institute safety procedures, persuade the employees of the corporation of the need for safety, and, in general, institute plans toward reducing the rate of accidents among the employees of the corporation. Consistent deviations from the average accident rate are reasonably attributable to factors such as those mentioned above over which the managers have control.

The plaintiffs place great reliance on the inviolability of the corporate form, and argue that "[t]he separateness of a corporation notwithstanding common ownership is ordinarily disregarded only where there is fraud, where the corporation is an agent, and where the corporation is being used to evade the law." We do not think that the rule in question has the effect of destroying the separateness of the various corporations involved. It is only a means of providing the insurer with an additional factor to help in computing a premium rate which more closely reflects the expected losses of the insured employer. There are several other factors by which corporations are grouped together for the purpose of calculating expected losses which obviously do not threaten the sanctity of the corporate form. For example, employers are grouped according to the type of work done by their employees regardless of whether the employers are corporations or are formed into other types of business organizations. Rule 9 is simply a way of grouping employers according to the factor of common control, which, like the type of work done by an employee,

---

[5] In the *Century Cab* case, *supra*, at pp. 656–657, we noted the finding that "Ownership and not identity of the operator determines the risk to be rated, just as it determines the person required to carry compulsory motor vehicle insurance."

is related to the rate at which losses can reasonably be expected.

In conclusion we are of opinion that Rule 9 of § III of the experience rating plan is not "unfairly discriminatory" and does not lead to "excessive" rates.

The decree is reversed. A new decree is to be entered declaring that Rule 9 of § III of the experience rating plan is not unfairly discriminatory as applied to these plaintiffs.

*So ordered.*

WHITTEMORE, J. (concurring) Mr. Justice Spalding and I would hold that each plaintiff was an "employer to whom a policy . . . [was] issued pursuant to" G. L. c. 152, § 65A, so that there was a right of appeal under § 65K. There was initially an appeal to the division, and the Commissioner's prior agreement to the plan to have the Bureau assign the risks was in a sense a designation by the Commissioner of whatever insurers the Bureau assigned. The plaintiffs, as a result of what took place, held assigned risk policies and § 65K intends that the holders of such policies have a right of appeal in respect of the premiums.