Connolly, J.
The plaintiff, Town of Foxboro (“Foxboro”) filed this complaint pursuant to G.L.c. 30A, 514, seeking review of a decision by the Contributory Retirement Appeal Board (“CRAB") granting Arthur Folsom (“Folsom”) accidental disability under G.L.c. 32, the public retirement law. There are three motions presently before this Court: defendant Norfolk County Retirement Board’s (“NCRB”) motion to dismiss Foxboro’s complaint; Foxboro’s cross motion for partial judgment on the pleadings; and Folsom’s cross motion for judgment on the pleadings. After considering the administrative record and the arguments of counsel, NCRB’s motion to dismiss is DENIED, Foxboro’s cross motion for partial judgment on the pleadings is ALLOWED, and Folsom’s cross motion for judgment on the pleadings is DENIED for the reasons set forth below.
*396 BACKGROUND
The following facts are not disputed by the parties.
Arthur Folsom was employed as Building Commissioner for the Town of Foxboro from August 1986 to June 1991. Prior to that, he had been Building Inspector for the towns of Craver and Wareham. Folsom has been a member of the Norfolk County Retirement System since August 1996.
In January 1992, Folsom applied to NCRB for accidental disability retirement claiming that he was totally and permanently disabled. Folsom claimed that he became disabled as a result of a series of job related injuries or aggravation of injuries he suffered while employed as Building Inspector for the Town of Foxboro.
First, Folsom alleged that in November 1987 he suffered a neck injury when the Town of Foxboro car he was driving was struck by a metal gate. After the accident, Folsom experienced headaches, pain in his neck and right shoulder, and numbness in his right arm. Following this incident, for which he took two days of sick leave, Folsom returned to work.
On December 28, 1987, Folsom began treating for his neck discomfort with Dr. McGuillicuddy. An x-ray taken in March 1988 of Folsom’s neck revealed “loss of the normal cervical lordosis which may represent an element of muscle spasm . . . slight decrease in height of the C5 vertebral body . . . unchanged since the examination of December 17, 1987 . .. most likely ... a congenital normal variant.”
Folsom next alleged that he was injured on or about February 13, 1989, when he jumped over a ditch and fell at a construction site while investigating the project’s building permit status. Folsom experienced pain in his right shoulder and neck area for which he was treated in the emergency room. While x-rays revealed no fractures, he was given a Thomas Collar and a sling. Folsom also returned to work after this incident but was advised to avoid the more physical aspects of his job.
On February 21,1989, Folsom began treating with Dr. Akiki, who diagnosed acute cervical strain and contusion of the right shoulder. A CAT scan in March 1989 revealed a herniated cervical disc at C4-5. An MRI on April 14, 1989 revealed “evidence of a disc herniation centrally and to the right at C4-5 with mild bulging of the annulus at C6-7 . . .”
Lastly, Folsom alleged that on or about April 2, 1991, he injured his neck when he twisted the wrong way while getting out of his car in the Foxboro Town Hall parking lot. Dr. Akiki prescribed the use of a cervical collar for two weeks. Dr. Akiki related this new pain to the February 13, 1989 injury. Folsom did not return to work for more than 2 or 3 hours at a time after this last incident using up accrued sick days until the end of his term in June. A neck MRI on June 3, 1991 documented central and right-sided herniation of C4-5 and C6-7 discs.
Following Folsom’s request for accidental disability retirement benefits in January 1992, the Town of Foxboro filed a “Department Head/Employer’s Statement” responding to each of Folsom’s alleged job-related injuries and attendance data.[2] Foxboro also exercised its right to be a party to the proceedings before the NCRB pursuant to 840 CMR 10.05(2).[3]
Pursuant to G.L.c. 32, §7, an orthopedic regional medical panel was convened and conducted three separate examinations of Folsom on April 27, April 28, and April 30, 1992. Two of the three physicians composing the panel, Dr. Michele L. Masi, a specialist in neurology, and Dr. Forrest N. Maddix, an orthopedic specialist, answered the questions presented to them on the existence of a disability, permanence and causation in the negative. Thomas Sciasia, a neurological consultant, concluded that Folsom was permanently disabled but stated that his disability was non work-related. Based on the medical panel’s report, NCRB denied Folsom’s application on August 21, 1992.
Folsom appealed NCRB’S decision denying him accidental disability retirement benefits to CRAB. A hearing was held on November 17, 1993 at the DALA offices. The parties submitted the case on documents. After reviewing all of the documents in the record, DALA Administrative Magistrate Ojerholm concluded that Folsom had been deprived of a proper medical panel evaluation. Magistrate Ojerholm concluded that because the doctors had asserted the need for further testing, they had rendered their opinions without reviewing all of the pertinent facts or diagnostic tests. Magistrate Ojerholm reversed NCRB’s decision and remanded the matter for the purpose of convening a new medical panel to conduct a new examination on Folsom.
Folsom was examined by the new medical panel on March 28, March 29, April 2 and April 4, 1994. Two of the three physicians, Dr. Michael Biber and Dr. Albert England, found Folsom to be totally disabled and found the disability to be job-related. The last physician, Dr. Mark Weiner, answered all three medical panel certificate questions in the negative.
In February 1995, NCRB voted to seek clarification from Dr. Biber because his opinion was unclear and raised questions as to the permanence of Folsom’s injury and as to the effect certain treatments might have on his injury. After NCRB’s petition for clarification, Dr. Biber’s position remained unclear and NCRB petitioned the Public Employee Retirement Administration Commission (“PERAC”) for a re-examination. Folsom was newly examined on three separate occasions in November 1995. After these last examinations, all three physicians answered the three certificate questions in the affirmative.
*397 On June 19, 1996, NCRB found that there was substantial evidence to support the conclusion that Folsom was permanently disabled due to injuries or aggravation of injuries that might have resulted from the 1989 and 1991 injuries to his neck. NCRB voted to grant Folsom accidental disability retirement benefits and forwarded the documentation to PERAC. On July 2,1996, PERAC remanded the case back to NCRB requesting further findings. After receiving the new findings from NCRB, on July 24, 1996, PERAC once again remanded Folsom’s application. PERAC indicated that there was not substantial evidence to support the conclusion that Folsom’s disability was the natural and proximate cause of the injuries he sustained in 1989 and 1991.[4]
The Town of Foxboro, who was present at the NCRB meeting in June, appealed the decision granting Folsom accidental disability retirement benefits to CRAB. NCRB moved to dismiss Foxboro’s appeal arguing that PERAC had not yet approved the award. NCRB’s motion was granted by DALA on July 30, 1996.
NCRB affirmed Folsom’s award and on August 19, 1996, PERAC again remanded the application. PERAC’s reasoning was that NCRB’s finding that Folsom was permanently disabled due to the 1989 and 1991 injuries to his neck was not supported by substantial evidence due to the lack of corroborating evidence or injury reports.
On August 23, 1996, Foxboro appealed NCRB’s actions affirming Folsom’s application to CRAB. On November 4, 1996, NCRB once again filed a motion to dismiss Foxboro’s appeal on the grounds that PERAC had not yet approved the award of accidental disability benefits. NCRB’s motion to dismiss was denied by DALA on January 2, 1997.
On November 23, 1996, NCRB affirmed Folsom’s request for accidental disability benefits and on December 13, 1996, filed an appeal with CRAB regarding PERAC’s decision to remand Folsom’s award for accidental disability benefits.
On January 6, 1997, Foxboro filed a Motion to Intervene in the case between NCRB and PERAC. The Administrative Magistrate assigned to hear the case denied Foxboro’s motion to intervene and, instead, allowed Foxboro to participate pursuant to the provisions of 801 CMR 1.01(9)(e).
On October 22, 1997, DALA heard NCRB’s appeal of PERAC’s remand of Folsom’s. Both parties and Foxboro made arguments on the record. Administrative Magistrate Sarah H. Luick found that Folsom was injured while in the performance of his duties and that he had proved his entitlement to accidental disability benefits.[5] Magistrate Luick awarded Folsom accidental disability benefits. CRAB affirmed the Administrative Magistrate’s award in a decision dated April 6, 1998. This suit followed.
DISCUSSION
The party appealing an administrative decision bears the burden of demonstrating the decision’s invalidity. Merisme v. Board of Appeals on Motor Vehicle Liab, Policies & Bonds, 27 Mass.App.Ct. 470, 474 (1989). A Court may set aside a state administrative agency’s decision if it determines, based on the record before it, “that the substantial rights of any party may have been prejudiced because the agency decision is: in violation of constitutional provisions: in excess of the statutory authority or jurisdiction of the agency; based upon an error of law; unsupported by substantial evidence; unwarranted by facts found by the court on the record submitted; arbitrary or capricious; an abuse of discretion; or otherwise not in accordance with the law." G.L.c. 30A, §14(7)(a)-(g).
General Laws c. 30A, §14 provides that the right to obtain judicial review belongs to a “person aggrieved” by a final decision of an agency. The words “person aggrieved” are not to be given a narrow construction. Shaker Community, Inc. v. State Racing Commission, 346 Mass. 213 (1963). Generally, a person aggrieved must allege substantial injury directly caused by the agency’s action. Massachusetts Elec. Co. v. Massachusetts Comm’n against Discrimination, 375 Mass. 160, 177-78 (1978). NCRB asserts that Foxboro lacks standing to bring an appeal under G.L.c. 30A, §14 because it is not a "person aggrieved” and has asked this court to dismiss the present suit. Foxboro argues that it has standing to bring this suit as a “person or appointing authority” that has been substantially injured by CRAB’s decision to award Folsom accidental disability retirement benefits. This court finds that Foxboro has standing to challenge CRAB’s decision under G.L.c. 30A, §14.
Foxboro, as a member of the Norfolk County Retirement Board, pays a proportional share of the costs of the system. Part of these costs include the retirement benefits paid to former employees who, like Folsom, have been retired for accidental disability. Foxboro, as an employer, has standing to challenge CRAB’s decision from “the fact that the amount of its contributions to the [NCRB] is affected by the amount of [retirement] benefits paid to its employees who [have been retired for accidental disability.]” Guillig v. Director of the Division of Employment Security, 389 Mass. 483, 485 and n.5 (1983), quoting Pacific Mills v. Director of the Div. Of Employment Sec., 322 Mass. 345, 346 (1948).
Although economic injury itself is not sufficient to confer standing to Foxboro, the special circumstances of this case mandate such a result. See South Shore National Bank v. Board of Bank Incorporation, 351 Mass. 363, 367 (1966). Foxboro’s injury if the NCRB were to erroneously grant accidental disability to one of its employees who, Foxboro argues, is not truly disabled is concrete and not speculative or indirect. *398 See Ginther v. Commissioner of Insurance, 427 Mass. 319, 323 (1998) citing Burlington v. Bedford, 417 Mass. 161, 164 (1994). Further, if an employer had no right to appeal under circumstances such as this one, all appeals of agency decisions awarding disability retirement benefits would effectively be eliminated. See Sheriff of Suffolk County v. CRAB, Civil Action No. 96-6539 (Suffolk Super. Ct. October 27, 1998). For these reasons, Foxboro has proved that it is sufficiently aggrieved by CRAB’s action and therefore has standing under G.L.c. 30A, §14. NCRB’s motion to dismiss Foxboro’s complaint for lack of standing must be DENIED.
Next, Foxboro argues that CRAB’s decision should be reversed and the matter remanded because CRAB committed an error of law in denying its Motion to Intervene in the administrative proceedings. The court is not bound by an administrative decision that was based on an error of law. Bagley v. Contributory Retirement Appeal Board, 397 Mass. 255, 259 and n.5 (1986).
The Standard Adjudicatory Rules of Practice and Procedure grant a Presiding Officer broad discretion with regard to interveners. See Boston Edison Co. v. Department of Public Utilities, 375 Mass. 1, 45 (1978), citing Newton v. Department of Pub. Utils., 339 Mass. 535, 543 n.1 (1959); 801 CMR 1.01(9). However, the Presiding Officer’s discretion is not unlimited. Id. In the present case, Foxboro filed a Motion to Intervene pursuant to 801 CMR 1.01(9)(a).[6] In the exercise of her discretion, the Administrative Magistrate hearing the case denied the motion allowing Foxboro, instead, to participate. This Court finds that it was error for the Administrative Magistrate to deny Foxboro’s Motion to Intervene.
The Standard Adjudicatory Rules of Practice and Procedure dictate what a Presiding Officer ought to consider when deciding a Motion to Intervene. Specifically, 801 CMR 1.01(9)(d) states that “(t]he Presiding Officer may permit any Person who is likely to be substantially and specifically effected by the proceeding . . .” the right to intervene (emphasis added). On the other hand, 801 CMR 1.01(9)(e) states that “(t]he Presiding Officer may permit any Person who may be affected by a proceeding" the right to participate (emphasis added). Where persons permitted to intervene have all the rights of a party, participants only have the right to argue orally at the close of a hearing and to file a brief.
In the present case, DALA held a new evidentiary hearing where Folsom testified. Foxboro, as a participant, was not permitted to present any evidence or to cross examine Folsom. As a result, the Administrative Magistrate did not have all the pertinent facts before her which had been presented at the NCRB hearing where Foxboro had been a party. DALA hearings are de novo factfinding hearings. Dunn v. Contributory Retirement Appeal Board, 46 Mass.App.Ct. 359, 361 (1999). The DALA Magistrate hearing the present case was not bound by NCRB’s findings and, instead, made her own findings. Id. As such, it is important that all the evidence presented by Foxboro to NCRB and PERAC which aided them in reaching their decisions be presented at the hearing before DALA to aid the Administrative Magistrate in making her decision.
Further, by denying Foxboro status as an inter-vener and awarding it the status of a participant, the Presiding Officer erroneously made the determination that Foxboro was not likely to be substantially and specifically affected by the proceeding. For the same reasons that this court found that Foxboro was sufficiently aggrieved to have standing to challenge CRAB’s decision, this court concludes that Foxboro should have been allowed to intervene as a “person likely to be substantially and specifically affected” by the proceedings before DALA.
ORDER
For the foregoing reasons, it is hereby ORDERED that NCRB’s Motion to Dismiss be DENIED, that Foxboro’s Motion for Partial Judgment on the Pleadings be ALLOWED, and Folsom’s Motion for Judgment on the Pleadings be DENIED.
Judgment shall enter annulling the April 6, 1998 decision of the Contributory Retirement Appeal Board. This case is remanded to CRAB for a rehearing in this matter at which hearing Foxboro shall be permitted to intervene.

 840 CMR 10.07 entitled Information to be Obtained From Member's Department Head and Employer, mandates that the retirement board request a statement from the member’s department head and employer with information about the member’s duties and capacity to perform those duties, disability, and cause of disability.

 840 CMR 10.05 entitled Proceedings; Parties; Representation; Record, states that “ (2) Parties — Parties to a proceeding for ordinary or accidental disability retirement include the member in service who files the application and the member’s employer. . .”

 G.L.c. 32, §21(1)(d) authorizes the Commissioner of PERA to review all accidental and disability pensions granted by retirement boards and to remand their decision if the Commissioner finds that such decision is unsupported by substantial evidence.

 Magistrate Luick found that Folsom’s 1987 and 1989 injuries were compensable but that the body action involved in the 1991 injury was too common an activity of daily life to be a compensable injury.

 801 CMR 1.01(9) entitled Intervention and Participation, states that “(a) Intervention — Any Person not initially a Party, who may be substantially and specifically affected thereby and wishes to intervene or participate in an Adjudicatory Proceeding shall file a written petition for leave to be allowed to do so.”