THE RISK MANAGEMENT FOUNDATION OF THE HARVARD
MEDICAL INSTITUTIONS, INCORPORATED, & others[1] *vs.*
COMMISSIONER OF INSURANCE & others[2]
(and a companion case[3]).

Suffolk. February 7, 1990. - May 23, 1990.

Present: LIACOS, C.J., ABRAMS, NOLAN, & LYNCH, JJ.

*Insurance*, Medical malpractice insurance, Commissioner of Insurance,
Rating. *Commissioner of Insurance. Statute*, Construction. *Constitu-
tional Law*, Police power, Delegation of powers. *Administrative Law*,
Judicial review, Official notice. *Estoppel. Words*, "Policyholder."

In a proceeding to determine liability for the recoupment of deficits sus-
tained by the Medical Malpractice Joint Underwriting Association of
Massachusetts (JUA) on its medical malpractice insurance coverage,
the Commissioner of Insurance properly concluded that all insured
Massachusetts licensed physicians and hospitals, whether or not they
are insured by JUA, may be liable for recoupment of such deficits
under the recoupment provisions of St. 1980, c. 333. [502-505]
St. 1980, c. 333, providing for recoupment liability for any deficits sus-
tained by the Medical Malpractice Joint Underwriting Association of
Massachusetts on its medical malpractice insurance coverage, was a
constitutionally permissible exercise of the Legislature's police power
and a proper delegation of authority to the Commissioner of Insurance.
[505-507]
In a recoupment proceeding involving liability for any deficits sustained by
the Medical Malpractice Joint Underwriting Association of Massachu-
setts (JUA) on its medical malpractice insurance coverage, a notice of
hearing issued to, among others, physicians' specialty groups, JUA
member companies, Federal risk retention and risk purchasing groups
and other providers of medical malpractice insurance coverage was not

---

[1]The New England Medical Center Hospitals, Inc., and the University
of Massachusetts Medical Center (Centers).

[2]Medical Malpractice Joint Underwriting Association of Massachusetts,
and the Massachusetts Medical Society, as interveners.

[3]Massachusetts Hospital Association, Inc., & another *vs.* Commissioner
of Insurance & another.

rendered inadequate by the fact that physicians in the Commonwealth did not receive individual notice. [507-508]

In a proceeding to determine liability for the recoupment of deficits sustained by the Medical Malpractice Joint Underwriting Association of Massachusetts (JUA) on its medical malpractice insurance coverage, the Commissioner of Insurance had discretion to assign liability to Massachusetts hospitals under St. 1980, c. 333, for the recoupment of any such deficits which may have resulted from inadequate malpractice insurance premiums paid by physicians; moreover, the Commissioner neither abused his statutory discretion, nor acted arbitrarily and capriciously, nor was he barred by principles of estoppel from recouping such deficits from the hospitals. [508-510]

CIVIL ACTIONS commenced in the Supreme Judicial Court for the county of Suffolk on March 7, 1989, and March 9, 1989, respectively.

The cases were reported by *Greaney*, J.

*William A. Horne* for Massachusetts Hospital Association, Inc.

*Nancy E. Ator* (*Andrew C. Pickett* with her) for Risk Management Foundation of the Harvard Medical Institutions, Inc., & others.

*Acheson H. Callaghan, Jr.*, for Medical Malpractice Joint Underwriting Association of Massachusetts, intervener.

*Richard M. Brunell*, Assistant Attorney General (*Mark H. Leymaster*, Assistant Attorney General, with him) for the Commissioner of Insurance.

LIACOS, C.J. In these consolidated cases, we must determine who may be liable under the recoupment provisions of St. 1975, c. 362, § 6, the statute which established the Joint Underwriting Association (JUA). The Centers claim that the Commissioner of Insurance (Commissioner) erroneously decided that all Massachusetts licensed physicians and hospitals, whether or not they are insured by the JUA, may be liable for the recoupment of any deficits sustained by the JUA on its medical malpractice insurance coverage. The Massachusetts Hospital Association, Inc. (MHA), challenges the Commissioner's conclusion that hospitals may be subjected to liability for the recoupment of a JUA deficit which may have resulted from inadequate malpractice insurance

premiums paid by physicians. We affirm the decision of the Commissioner.

1. *Statutory background.* In 1975, a medical malpractice crisis raged in the Commonwealth. Almost all of the insurance companies in Massachusetts had ceased issuing medical malpractice policies to doctors and hospitals in Massachusetts, and were threatening to cancel all outstanding policies. In response, the Legislature enacted St. 1975, c. 362, § 6, which established the Joint Underwriting Association, to provide coverage to physicians and hospitals on proof that they have made a reasonable effort to obtain malpractice insurance and have been unable to obtain it. The JUA consists of all insurers authorized to write personal injury liability insurance within the Commonwealth. The purpose of the JUA is "to provide medical malpractice insurance on a self-supporting basis." Section 6, third par. The JUA is empowered to issue insurance policies pursuant to a "plan of operation" promulgated by the Commissioner. Section 6, second par.

Statute 1975, c. 362, § 6, also provided for the recoupment of funds in the event that the JUA experienced a deficit. This provision, § 6, seventh par., and a subsequent modification, contain the language which generated the present dispute. Originally, paragraph seven provided:

> "Any deficit sustained by the association in any one year shall be recouped, pursuant to the plan of operation and the rating plan then in effect by [an assessment upon the policyholders, or] a rate increase applicable prospectively [, or both]; provided, however, that in no event shall a deficit incurred by the association be charged, directly or indirectly, to any person other than the insured under a policy of medical malpractice insurance; and provided, further, that for purposes of this sentence, when deficits sustained on account of physician or hospital malpractice coverage are being recouped, the term 'policyholders' shall mean all those licensed physicians or hospitals insured under a policy

> of medical malpractice insurance, whether obtained through the joint underwriting association or not."

The net effect of an amendment in 1980[4] was to delete the language providing the option of recouping a deficit through an "assessment" upon the policyholders, while retaining the option of recouping a deficit through a prospective rate increase. St. 1980, c. 333. The disputes which we resolve today revolve in part around the question who is subject to the recoupment provisions in light of the 1980 amendment.

2. *Procedural history.* The JUA, in its rate filing for 1988, included a request to "begin to recoup the existing JUA deficit in accordance with St. 1975, c. 362, § 6." The JUA estimated that it had incurred a deficit of approximately $140,000,000 resulting from inadequate premium rates charged to physicians for the years 1975-1982. The JUA proposed that the deficit be recovered from all licensed physicians in the Commonwealth over a five-year period.

A hearing officer of the Division of Insurance instituted a separate administrative proceeding to consider the JUA's request. Due to the potential liability of individuals and entities other than physicians insured by the JUA, the hearing officer issued broad notice to, among others, physicians' specialty groups, JUA member companies, Federal risk retention and risk purchasing groups, and other potential providers of medical malpractice insurance coverage. The hearing officer, at the request of several parties, agreed to issue interim rulings on certain questions of law before turning to the actuarial and technical aspects of the proceeding. The hearing officer concluded that, in the event a recoupment was ordered, the following health care providers would be subject to recoupment: "(1) all physicians, irrespective of the source of their insurance or indemnity coverage, including those who post bonds or otherwise satisfy financial responsibility for medical malpractice liability; (2) all hospitals, irrespective of the

---

[4]The Legislature amended § 6, seventh par., in 1980, by striking it out and by reenacting the paragraph without the language bracketed. St. 1980, c. 333.

source of their insurance or indemnity coverage, including those who post bonds or otherwise satisfy financial responsibility for medical malpractice liability."

The hearing officer also decided that "groups not eligible for JUA coverage in the years for which deficits are alleged to exist are not subject to recoupment." This category includes dentists, nurse-midwives, and community health centers, even if such providers were insured by the JUA after 1982. The hearing officer also concluded that additional notice was not necessary.

The Commissioner, on appeal, affirmed the decision of the hearing officer "in its entirety." The Centers and the MHA filed complaints for judicial review in the Supreme Judicial Court for Suffolk County pursuant to G. L. c. 175A, § 5A (1988 ed.). The cases were consolidated and reserved and reported to the court by a single justice.

3. *The Centers' Claims.*

a. *Recoupment from non-JUA insureds.* The Centers challenge the Commissioner's ruling that insured physicians and hospitals who are not insured by the JUA or its members are nonetheless subject to the recoupment provisions of St. 1980, c. 333. The Centers argue that the statutory phrase, a "rate increase applicable prospectively," cannot apply to non-JUA insureds, because, by its common definition, a "rate" cannot be meant to include a payment for which no insurance is received. In making their argument, the Centers claim that the 1980 amendment's explicit inclusion of non-JUA insureds in its definition of policyholders subject to recoupment was, in their words, an "oversight." We disagree.

The amendment, St. 1980, c. 333, eliminated the option of recoupment "by an assessment upon the policyholders." The amendment, however, retained the following proviso: "for the purposes of this sentence, when deficits sustained on account of physician or hospital malpractice coverage are being recouped, the term *'policyholders' shall mean all those licensed physicians or hospitals insured under a policy of medical malpractice insurance, whether obtained through the joint underwriting association or not*" (emphasis sup-

plied). The problem, which becomes apparent upon a reading of the entire amendment, is that nowhere else in the sentence does the word "policyholders" appear, for the word was omitted when the assessment language was deleted.

Despite the inartful craftsmanship that went into this statute, we think that a coherent meaning can be gleaned from the amendment's language. We do not agree that the answer lies in ignoring wholesale the reenactment of the definition of "policyholder," a proviso which occupies over one-third of the text of the paragraph in question. "When statutory language is reenacted, it is a principle of statutory construction that no change was intended in its meaning or scope." *General Elec. Co.* v. *Commissioner of Revenue*, 402 Mass. 523, 530 (1988), quoting *Massachusetts Mut. Life Ins. Co.* v. *Commissioner of Corps. & Taxation*, 363 Mass. 685, 691 (1973). We should strive, when faced with a seemingly intractable statutory provision, to harmonize the troublesome passages, not to pretend that one of the passages does not exist. "None of the words of a statute is to be regarded as superfluous, but each is to be given its ordinary meaning without overemphasizing its effect upon the other terms appearing in the statute, so that the enactment considered as a whole shall constitute a consistent and harmonious statutory provision capable of effectuating the presumed intention of the Legislature." *Commonwealth* v. *Woods Hole, Martha's Vineyard & Nantucket S.S. Auth.*, 352 Mass. 617, 618 (1967), quoting *Bolster* v. *Commissioner of Corps. & Taxation*, 319 Mass. 81, 84-85 (1946). "Our construction of the statute must be made 'upon the whole statute, [so] that no clause, sentence or word shall prove superfluous, void or insignificant, if, by any other construction they may all be made useful and pertinent.' " *Board of Appeals of Hanover* v. *Housing Appeals Comm. in the Dep't of Community Affairs*, 363 Mass. 339, 364 (1973), quoting *Commonwealth* v. *McCaughey*, 9 Gray 296, 297 (1857).

Taken as a whole, we understand St. 1980, c. 333, to mean that deficits may be recouped from non-JUA insureds. While the word "policyholders," which is defined to include non-

JUA insureds, does not appear verbatim in the first portion of the paragraph, the term is nevertheless implicit therein. The recoupment provision applies to entities and individuals "insured under a policy of medical malpractice insurance" which can reasonably be read as simply another way of expressing the term "policyholders." The disputed proviso itself bolsters this reading, for it tracks the above language, providing that policyholders shall mean those *"insured under a policy of medical malpractice insurance,* whether obtained through the joint underwriting association or not" (emphasis supplied). St. 1980, c. 333.[5]

Additionally, we do not agree with the Centers' argument that the term "rate," as used in the phrase "rate increase," must be defined solely as the price an insured pays in exchange for insurance. We must look at the phrase in the context of the statute. Because a recoupment applies to "policyholders," and "policyholders" includes non-JUA insureds, and the only method of recoupment is a "rate increase applicable prospectively," then the Legislature must have intended a "rate increase" to be construed broadly in order for the recoupment provision to have effect. We think that, as applied to non-JUA insureds, a "rate increase" can be viewed as a "charge," a word which itself is used in the statute to describe the recoupment activity. That the charge contemplated is as against the insureds, not the insurers, buttresses this view of the broader meaning of "rate increase."[6]

---

[5]We add that, contrary to the Centers' contention, in the original version of the recoupment paragraph, the definition of "policyholders" applied to both "assessments" and "prospective rate increases." Policyholders, under that provision, were defined "for purposes of this sentence, when *deficits . . . are being recouped,*" without restriction as to the method of recoupment (emphasis supplied). St. 1975, c. 362, § 6, seventh par.

[6]Our reading of the provision does not make ineffective the Legislature's amendment of the statute. By eliminating the assessment provision, and retaining the prospective rate increase language, the Legislature opted for a method of collection which would look to the future, rather than the potentially more burdensome method of examining past activity for liability purposes.

The Centers argue that subjecting non-JUA insureds to the recoupment provisions contravenes the Legislature's intent that the JUA be "non-exclusive" and "temporary" and "self-supporting." We disagree. The JUA remains nonexclusive; health care providers are free to obtain their insurance from entities other than the JUA. The JUA continues to be a "temporary" association. Statute 1975, c. 362, § 13, originally authorized the JUA to exist for a period of two years. The JUA has been extended several times, most recently to July 1, 1992. St. 1986, c. 351, § 37. Finally, while the general term "self-supporting" may arguably appear to be inconsistent with the more specific provision allowing for recoupment from non-JUA insureds, we adhere to the principle that general statutory language must yield to that which is more specific. See *Crocker* v. *Martha's Vineyard Comm'n, ante* 77, 80-81 n.6 (1990); *Hennessey* v. *Berger*, 403 Mass. 648, 651 (1988).

Additionally, we think that the Centers' reliance on G. L. c. 175F, § 4 (1988 ed.), is misplaced. That section first exempts "self-insurance trust funds" from liability under St. 1975, c. 362, § 6, then modifies this general exemption by providing that participants who were JUA insureds previously are entitled to dividends and are liable for assessments arising out of the years in which they purchased insurance from the JUA. Rather than signifying, as the Centers assert, that the Legislature never intended non-JUA insureds to be subject to recoupment rate increases, G. L. c. 175F, § 4, merely carves out an exception for self-insurance trust funds, making them free from recoupment rate-making liability.

b. *Constitutionality of St. 1980, c. 333.* The Centers claim that St. 1980, c. 333, constitutes an unconstitutional delegation of the power to tax. We disagree. Recoupment liability under c. 333 is one of the many conditions of licensure which the Legislature through its police power may impose on doctors and hospitals. See *Blue Hills Cemetery, Inc.* v. *Board of Registration in Embalming & Funeral Directing*, 379 Mass. 368, 372 (1979); *Mobil Oil Corp.* v. *Attorney Gen.*, 361 Mass. 401, 413 (1972). Whether a statute represents "a

valid exercise of the police power depends upon whether it 'bears a real and substantial relation to the public health, safety, morals, or some other phase of the general welfare.'" *Id.*, quoting *Coffee-Rich, Inc.* v. *Commissioner of Pub. Health*, 348 Mass. 414, 422 (1965).

Clearly, c. 333 bears a substantial relation to the public health. The JUA was created to guarantee that medical malpractice insurance would remain available so as to ensure that doctors continue to practice and that hospitals continue to operate in the Commonwealth. In order to maintain the viability of the JUA, the Legislature could reasonably turn to doctors and hospitals in the event of a deficit. These groups, it should be noted, benefit from the existence of the JUA, in that JUA insurance was and is available to them, and in that the JUA's presence helps to maintain the smooth operation of the medical care marketplace. We conclude that the Legislature acted within its constitutional authority. See *Howes Bros.* v. *Unemployment Compensation Comm'n*, 296 Mass. 275, 283, cert. denied, 300 U.S. 657 (1936).

The Centers argue that, even if the recoupment provision may be viewed as a lawful exercise of the Legislature's police power, the statute nonetheless constituted an improper delegation of authority. We disagree. "Firmly established in our jurisprudence is the principle that the General Court may not delegate the general power to make laws. . . . Equally well established is the principle that the Legislature may delegate to an officer of the executive branch the working out of the details of a policy established by the General Court . . . . However, clear legislative standards must be provided to guide the officer in exercising the delegated authority in accordance with the legislative policy. . . . Provision for judicial review is needed to ensure that the authority delegated is used in accordance with the standards and policy adopted by the General Court." (Citations omitted.) *Opinion of the Justices*, 393 Mass. 1209, 1219-1220 (1984). "[W]e do not insist upon '[a] detailed specification of standards,'. . . and have allowed 'the Legislature [to] delegate to a board or an individual officer the working out of the details of a policy

adopted by the Legislature'. . . even 'very general [legislative] guides' are sufficient if appropriate judicial review procedures are provided for." (Citations omitted.) *Blue Cross of Mass., Inc.* v. *Commissioner of Ins.*, 397 Mass. 117, 128 (1986).

The recoupment provisions meet these criteria. They require that "any provision for recoupment. . . shall be based upon the [JUA's] loss and expense experience, and investment income from unearned premium and loss reserves together with such other information . . . as the commissioner may deem appropriate." St. 1975, c. 362, § 6, eighth par. The rates "shall be on an actuarially sound basis and shall be calculated to be self-supporting." *Id.* In addition the rates are subject to the requirements of G. L. c. 175A, § 5A, which authorizes the Commissioner to establish "adequate, just, reasonable and nondiscriminatory premium charges," and provides for judicial review. These guidelines, in our view, sufficiently limit the discretion of the Commissioner. See *Blue Cross of Mass., Inc.* v. *Commissioner of Ins., supra* at 127-128; *Opinion of the Justices*, 251 Mass. 569, 610-611 (1925). See also *Medical Malpractice Joint Underwriting Ass'n of Mass.* v. *Commissioner of Ins.*, 395 Mass. 43, 52-53 (1985).

c. *Notice.* The Centers claim that the method of notice used in this case was inadequate and that individual notice was required. A rate-making proceeding[7] is essentially legislative in nature. See *Massachusetts Auto. Rating & Accident Prevention Bureau* v. *Commissioner of Ins.*, 389 Mass. 824, 846 (1983); *American Employers' Ins. Co.* v. *Commissioner of Ins.*, 298 Mass. 161, 169 (1937). In this case, broad notice was issued to, among others, physicians' specialty groups, JUA member companies, Federal risk retention and risk purchasing groups and others providing medical mal-

---

[7]While a recoupment proceeding may not be a rate-making proceeding in the most literal sense, it does bear sufficient similarities for it to be treated as such. The proceeding is subject to the procedural requirements of G. L. c. 175A, § 5A.

practice insurance coverage.[8] Such notice was sufficient. See *Century Cab Inc.* v. *Commissioner of Ins.*, 327 Mass. 652, 659-660 (1951). Every physician in the Commonwealth was not required to receive individual notice in order for the proceeding to be valid. *Id.*[9]

4. *The MHA's arguments.* The MHA argues that c. 333 does not authorize the recoupment from hospitals of deficits caused by inadequate premium rates charged to physicians.

Chapter 333 states that, "when deficits sustained on account of *physician or hospital malpractice coverage* are being recouped, the term 'policyholders' shall mean all those licensed *physicians or hospitals* insured under a policy of medical malpractice insurance" (emphasis supplied). The use of the word "or," contrary to the MHA's suggestion, did not bar an imposition of liability against both physicians and hospitals. Rather, the disjunctive suggests that the Commissioner may, in his discretion, assign liability to either physicians, or hospitals, or both. See *Kvitka* v. *Board of Registration in Medicine*, ante 140, 143 (1990). The phrases in question are descriptive, not restrictive. Nothing in the statute suggests that they were intended to limit the Commissioner's discretion.[10]

Furthermore, St. 1986, c. 351, § 31, which amended St. 1975, c. 362, § 6, supports our view that the Commissioner has such discretion. Chapter 351 provides, in relevant part: "Upon approval of the commissioner, the [JUA] may for all

[8]The hearing officer indicated in his decision that he would take the additional precaution of publishing a notice in the quarterly newsletter of the Board of Registration in Medicine, of notifying the member companies of the JUA, and of assisting any interested party in any other notification it wished to undertake.

[9]At any rate, the Centers have not demonstrated the "substantial prejudice" which is a prerequisite to reversing an agency action on account of defective notice. *Shoolman* v. *Health Facilities Appeals Bd.*, 404 Mass. 33, 42 (1989), citing *Solimeno* v. *State Racing Comm'n*, 400 Mass. 397, 406 (1987).

[10]We reject the MHA's contention that the use of the singular in the phrase "pursuant to the plan of operation and the rating plan then in effect," prohibits the recoupment of a physician deficit from hospitals.

purposes consider the business of each category of health care provider as a separate line of business." Implied in this provision is the notion that the Commissioner has discretion to allow the JUA to treat hospitals and physicians as one unit for recoupment purposes. Indeed, considering the requirement of approval for separate treatment, collective treatment appears to be the general rule to which separate treatment is the exception, at least as of the 1986 amendment.

The MHA argues that, even if the Commissioner has statutory authority to recoup physician deficits from hospitals, he has abused his discretion, has acted arbitrarily and capriciously and is barred by principles of estoppel from recouping such deficits from hospitals. The MHA asserts that hospitals and physicians always have been treated separately for all rate-related purposes, and that hospitals have refrained from playing a role in establishing physician rates. The MHA claims that the hospitals reasonably relied upon such separate treatment and that it would be unfair for the Commissioner now to "change the rules for recoupment," because the MHA allegedly would have participated in the determination of physicians' rates.

In our view, the Commissioner's action was not arbitrary or capricious and did not constitute an abuse of his statutory discretion. See *Massachusetts Medical Soc'y* v. *Commissioner of Ins.*, 402 Mass. 44, 50 (1988). The hearing officer found that, while there had been some separate treatment for the determination of hospital rates, major components of the hospital rates are not always distinct from the physician rate determination, and that for most purposes hospitals and physicians have not been treated separately. The fact that hospitals did not themselves generate the deficit and had been treated separately for some rate-making purposes does not immunize them from recoupment liability. The Commissioner acted within the bounds of his discretion.

As to the MHA's estoppel argument, " '[g]enerally, the doctrine of estoppel is not applied against the government in the exercise of its public duties, or against the enforcement

of a statute.' . . . Estoppel is not applied to governmental acts where to do so would frustrate a policy intended to protect the public interest." *LaBarge* v. *Chief Admin. Justice of the Trial Court*, 402 Mass. 462, 468 (1988), quoting *Gamache* v. *Mayor of N. Adams*, 17 Mass. App. Ct. 291, 294 (1983). Estoppel here could frustrate the policy of ensuring the financial viability of the JUA so that physicians and hospitals may remain insured and so that the public health is adequately protected.

We remand the cases to the single justice who is to order entry of judgments affirming the decision of the Commissioner.

*So ordered.*