Barrett, J.
The plaintiff brought this action after she was fired from her position with Memmack Valley Federal Credit Union, Inc. (“Merrimack”) by Merrimack’s President and Chief Executive Officer, Duncan MacLeod (“MacLeod”). Plaintiffs suit, as originally filed in August 1992, alleged wrongful termination, breach of credit contract, intentional interference with advantageous relationships, negligent and intentional infliction of emotional distress, and alleged violations of G.L.c. 93A. A claim for violation of the Massachusetts Equal Rights Act, G.L.c. 93A, §102(a), was later added. A defendants’ motion for summary judgment on all the original claims was granted (Borenstein, J.), leaving the Massachusetts Equal Rights Act violation as the only viable claim. Defendants now move for summary judgment on Count VI alleging violation of the Massachusetts Equal Rights Act. For the reasons set forth below, the defendants’ motion is allowed.[2]
BACKGROUND
Plaintiff began her employment with Merrimack in 1980, performing clerical duties with the accounting department. During the next eleven years, she received several promotions until in 1991 her title was Assistant Vice President of Finance.
*301 Early in 1989, the plaintiff and her husband obtained a “Loanliner Home Equity Line” (“credit line”) from Merrimack. The terms of the credit line allowed plaintiff to borrow an amount up to the assessed tax value of her home minus the sum of any outstanding mortgages on the house. When the plaintiff and her husband refinanced their home in July 1991, they owed Merrimack $110,000 on the mortgage and the outstanding amount borrowed from the credit line.
On Friday, August 29, 1991, the plaintiff requested an advance of $18,500 on her credit line from Kathy Corcoran, a Merrimack employee who dealt with home equity loans. Ms. Corcoran informed the plaintiff that she had only $6,000 of credit available due to the refinancing of her home. In fact, according to Ms. Corcoran, the credit line should have been or was going to be discharged. In response to this information, the plaintiff said that she would take no action on her request for an advance until the next Wednesday, when she would be able to talk with John Atwood, a senior Merrimack executive. However, later that same day, the plaintiff submitted the necessary paper work for the advance to customer service representative Margo Davis who processed the request and transferred $18,500 into the plaintiffs account.
Plaintiff contends that, following her conversation with Ms. Corcoran, she talked with William Betton, Vice President for operations, and Judy Martanoli, Collections Supervisor, who said that, as long as computer records showed the credit line was available, the plaintiff should be able to borrow on it. Following this advice, the plaintiff alleges that she and Margo Davis reviewed the computer records and saw there was available credit. Plaintiff accepted the advance, based on the computer records and her assumption that Ms. Corcoran’s information was incorrect.
The next week. Merrimack officials began an investigation of the circumstances surrounding the advance. Defendant MacLeod received written statements from Ms. Corcoran, Ms. Davis and Loan Supervisor Dean Kuzmitski. MacLeod subsequently discussed the issue with John Atwood, Supervisor Peter Matthews, Assistant Vice President of Human Resources Nancy Jones, Chairman of the Board Frank Serio, and Chairman of the Personnel Policy Committee Mike Sayler. In addition, MacLeod formed a review committee consisting of himself, Ms. Jones and Mr. Sayler. The committee interviewed the plaintiff, Ms. Davis, Ms. Corcoran and Ms. Kuzmitski.
Despite the plaintiffs explanation for her actions, she was terminated on September 11, 1991, based upon the committee’s conclusion that the plaintiff had committed a serious breach of trust and employment policy.
DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to any material fact in dispute and where the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, “and [further,] that the moving party is entitled to judgment as a matter of law." Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). “Acomplete failure of proof concerning an essential element of the non-moving party’s case renders all other facts immaterial” and mandates summary judgment in favor of the moving party. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 711 (1991) (citing Celotex v. Catrett, 477 U.S. 317, 322 (1986)).
Plaintiff alleges that the defendants’ actions amounted to gender discrimination in violation of her rights as protected by the Massachusetts Equal Rights Act (“Equal Rights Act”), G.L.c. 93A, §102. Defendants argue that G.L.c. 151B provides the exclusive remedy for employment-related discrimination claims. Although there is no Massachusetts Appellate decision directly on point, a number of Superior Court decisions have recognized Chapter 151B as the exclusive remedy for discrimination arising during the course of employment. Titcomb v. Boston Safe Deposit & Trust Co., Inc., No. 92-6585 (Suf. Sup. Ct., June 9, 1993) (Sosman, J.) citing Agin v. Federal White Cement, Inc., No. 91-1426 (Hampden Sup. Ct., September, 1992) (Sweeney, J. and Moriarty, J.); Pappas v. Chestnut Knoll, No. 91-0044 (Hampden Sup. Ct., June 18, 1992) (Keady, J.). Radhika Balakrishnan, et al v. Western New England College, et al, No. 90-9024 (Hampden Sup. Ct., July 2, 1993) (Ford, J.).
The relevant provisions of the Equal Rights Act, G.L.c. 93, §102 states:
All persons within the commonwealth regardless of sex, race, color, creed or national origin, shall have, except as is otherwise provided or permitted by law, the same rights enjoyed by white male citizens, to make and enforce contracts to inherit, purchase to lease, sell, hold and convey real and personal property, to sue, be parties, give evidence, and to the full and equal benefits of all laws and proceedings for the security of persons and property, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind and to no other.
The language of Section 102 is very broad in its scope. Titcomb, supra. Moreover, it does not contain any procedural, jurisdictional or statute of limitation requirements.
In contrast, G.L.c. 151B is a statute with a narrow scope, specifically addressing employment discrimination based on gender. Section 4(1) expressly prohibits sex-based discrimination in the employment setting:
It shall be an unlawful practice for an employer by himself or his agent, because of the race, color, religious creed, national origin, sex, sexual orienta *302 tion, which shall not include persons whose sexual orientation involves minor children as the sex object, or ancestry of any individual to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment, unless based upon a bona fide occupational qualification. G.L.c. 151B, §4(1) (emphasis added).
Other sections of G.L.c. 15 IB require strict adherence to detailed procedural, jurisdictional, and statute of limitation prerequisites. G.L.c. 151B, §§5, 6. In addition, Section 9 provides that the procedure detailed in Chapter 15IB, “shall, while pending, be exclusive; and the final determination therein shall exclude any other action, civil or criminal, based on the same grievance of the individual concerned.” G.L.c. 15 IB, §9 (emphasis added). Thus, by its own terms, Chapter 151B is plaintiffs only remedy.
It is a fundamental principle of statutory inteipretation that general statutoiy language must yield to a statute with more specific language. Risk Management Found. of Harvard Medical Insts., Inc. v. Comm’r of Insurance, 407 Mass. 498, 505 (1991). Thus, the specific and detailed language of Chapter 15 IB must prevail over the generalized terms of the Equal Rights Act.
To permit a plaintiff to bypass the procedural prerequisites enunciated in Chapter 15IB would destroy the effectiveness of the statute that specifically addresses job discrimination. Napolitan v. New England Telephone Co., C.A. No. 91-12973 (D.Mass. January 15, 1993) (G.L.c. 151B was the plaintiffs exclusive remedy for employment discrimination and dismissed the plaintiffs claim under G.L.c. 93, §102); Mouradian v. General Electric Co., 23 Mass.App.Ct. 538, 541 (1987), rev. den. 400 Mass. 1007 (1987) (G.L.c. 151B is the exclusive remedy in employment discrimination suits based on age).
Therefore, G.L.c. 93, §102 is inapplicable to disputes arising during the course of employment. General Laws c. 151B provides the plaintiff with the exclusive remedy for claims of job discrimination based on gender. Accordingly, the defendants’ motion for summary judgment as to Count VI is granted.
ORDER
It is therefore ORDERED that summary judgment enter for defendants on Count VI.

 As this decision disposes of this case on the merits, it renders moot several outstanding motions by plaintiff.